**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

97-50165

---

LOUIS D. HEIMANN,

Plaintiff-Appellant,

versus

THE NATIONAL ELEVATOR INDUSTRY PENSION FUND,
and THE NATIONAL ELEVATOR INDUSTRY HEALTH BENEFIT PLAN,

Defendants.

---

LOUIS D. HEIMANN, Jr., and LOU HEIMANN,

Plaintiff-Appellant,

versus

INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, and Ken BURKETT,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

August 27, 1999

Before EMILIO M. GARZA, STEWART, and DENNIS, Circuit Judges,

DENNIS, Circuit Judge:

Louis Heimann and his wife, Lou Heimann, appeal from the dismissal of their case for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). They contend that the district court erred in deciding that the Employee Retirement Income Security Act of 1974 (“ERISA”) preempted their

Texas state law claims for tortious interference with contract and intentional infliction of emotional distress. Alternatively, if the state law claims are preempted, they argue that their complaint states federal law claims upon which relief may be granted under ERISA §§ 502 (29 U.S.C.§ 1132) and 510 (29 U.S.C. § 1140). We affirm the district court's dismissal of the Heimanns' state law tort claims because of preemption, but reverse the dismissal of their suit entirely because their petition states actionable federal ERISA claims, and remand the case to the district court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Louis D. Heimann, the plaintiff appellant, was employed in the elevator industry for approximately 36 years and was a member of the International Union of Elevator Constructors ("IUEC"). During his years of employment, Mr. Heimann contributed to the National Elevator Industry Pension Fund and the National Elevator Industry Health Benefit Plan ("Plans"). It is undisputed that the Plans are governed by ERISA. Mr. Heimann is a participant and Mrs. Heimann is a beneficiary of the plans. Upon retirement, Mr. Heimann began to receive pension benefits from the Pension Fund and also obtained benefits from the Health Benefit Plan. The Plans specifically provide that benefits will be suspended if the retiree engages in work defined as "disqualifying employment."

Under the facts as alleged by the Heimanns, in March 1994, Mr. Heimann, while receiving benefits from the Plans, was hired by the University of Texas as an elevator inspector. The job does not

fall within the Plans’ definition of disqualifying employment. Before taking the job, Mr. Heimann conferred with representatives of the Plans and was assured that it did not constitute disqualifying employment. Nevertheless, the IUEC, through its business agent, Ken Burkett, intentionally and maliciously misrepresented to the Plans that Heimann was engaging in disqualifying employment. The IEUC’s actions caused the Plans to suspend Mr. Heimann’s pension benefits and terminate the Heimanns’ health benefits.

The Heimanns sued the Plans in federal court for wrongful termination of benefits (“Heimann I”). The Heimanns later brought suit in Texas state court against IUEC and Mr. Burkett for intentional infliction of emotional distress and tortious interference with contract (“Heimann II”). IUEC and Mr. Burkett removed Heimann II to federal court on the basis that the Heimanns’ state law causes of action were preempted by ERISA. Shortly after removal, Heimann I and Heimann II were consolidated.

IUEC and Burkett moved the district court to dismiss the Heimann’s state law claims on the grounds that they were preempted by ERISA and for failure to state an actionable claim under ERISA. The court adopted the recommendations of a magistrate judge and issued an “Order and Partial Judgment” dismissing Heimann II because of preemption and failure to state a claim, but retained jurisdiction over Heimann I.

The district court dismissed the plaintiffs’ claims in Heimann I, concluding that the Plans did not act wrongfully in terminating

the Heimanns' benefits. Subsequently, the parties settled the claims involved in Heimann I. The Heimanns appealed from the district court's Rule 12(b)(6) dismissal of their claims against IUEC and Mr. Burkett in Heimann II.

## II. ERISA COMPLETE PREEMPTION JURISDICTION

"[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it. Mitchell v. Maurer, 293 U.S. 237, 244 (1934). Juidice v. Vail, 430 U.S. 327, 331-332 (1977) (standing)." (internal quotations omitted); Steel Co. v. Citizens For A Better Environment, --- U.S. ---, 118 S.Ct. 1003, 1012 (1998) (*quoting* Arizonans for Official English v. Arizona, 520 U.S. 43, 70 (1997)) (*quoting* Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986)).

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The district courts have original jurisdiction over "federal question" cases; that is, those cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. Gully v. First National Bank, 299 U.S. 109 (1936); Louisville

& Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).

One oft-cited, yet often confused, corollary to the well-pleaded complaint doctrine "developed in the case law . . . is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63 (1987). As this court has recently pointed out, confusion arises in distinguishing between the "complete preemption" described in Metropolitan Life which creates federal removal jurisdiction and the more common ordinary preemption which does not.[1] See McClelland v. Gronwaldt, 151 F.3d 507, 515 (5th Cir. 1998).

Ordinarily, the term federal preemption refers to ordinary preemption, which is a federal defense to the plaintiff's suit and may arise either by express statutory term or by a direct conflict between the operation of federal and state law. Being a defense, it does not appear on the face of a well-pleaded complaint, and, thus, does not authorize removal to a federal court. Id. at 516. By way of contrast, complete preemption is jurisdictional in nature rather than an affirmative defense to a claim under state law. Id., *see also* Giles v. NYLCare Health Plans, Inc., 172 F.3d 332 (5th

[1]This court in *McClelland* utilized the term ordinary preemption in analyzing preemption under § 514 of ERISA. Thus, we will also utilize the term ordinary preemption in discussing preemption under § 514. However, for purposes of this opinion, the term ordinary preemption will encompass any term used to describe preemption under § 514 including, but not limited to, conflict preemption, express preemption and field preemption.

Cir. 1999). As such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims for relief or if the federal issue is initially raised solely as a defense. *See* Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998).

Historically, the doctrine of complete preemption has been narrowly applied. In general, to demonstrate that there has been complete preemption justifying federal removal jurisdiction over an otherwise purely state law claim, a petitioner must show (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right and (3) there is a clear Congressional intent that claims brought under the federal law be removable. Aaron v. National Union Fire Insurance Co., 876 F.2d 1157 (5th Cir. 1989). This test should be "applied with circumscription to avoid difficult issues of federal-state relations", and accordingly few federal statutes can meet such an exacting standard. Id. at 1161 (*citing* United Jersey Banks v. Parell, 783 F.2d 360, 368 (3rd Cir.) *cert. denied* 476 U.S. 1170 (1986)).

As the Supreme Court has noted, claims under the Labor-Management Relations Act of 1947 ("LMRA") have long qualified for complete preemption. Metropolitan Life, 481 U.S. at 63-64 ("For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment.")( *citing* Gully v. First National

Bank, *supra*.) (*citing* Avco Corp. v. AERO Lodge No. 735, 390 U.S. 557 (1968)) (*quoting* Franchise Tax Board of Cal. v. Const. Laborers Vacation Trust, 463 U.S. 1, 23 (1983) ("The necessary ground of decision [in Avco] was that the preemptive force of §301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."(footnote omitted))).

In Franchise Tax Board the Court held that ERISA preemption under § 514, without more, does not meet this standard and thus does not convert a state claim into an action arising under federal law (i.e., it is mere ordinary preemption). Id. at 25-27. That Court suggested, however, that a state action that was not only preempted by ERISA under § 514, but that also came "within the scope of § 502(a) [the civil enforcement provision] of ERISA[,]" might fall within the Avco rule. Franchise Tax Board, 463 U.S. at 24-25. In Metropolitan Life, 481 U.S. at 64, the Court had opportunity to address a claim which, "unlike the state tax collection suit in Franchise Tax Board, is within the scope of § 502(a)." In so doing, the Court noted that:

> [T]he language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA. Section 502(f) says:
>
> > "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29

> U.S.C. § 1132 (f).
> Cf. § 301(a) of the LMRA, 29 U.S.C. § 185(a).

Id. at 65.

The Court further reasoned that the presumption that the similar language in the two labor law statutes had a similar meaning was fully confirmed by the legislative history of ERISA's civil enforcement provisions. In this regard, the Court observed that:

> The Conference Report on ERISA describing the civil enforcement provisions of § 502 (a) says:
>
> > "[W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.' H.R.Cong.Rep. No. 93-1280, p. 327 (1974) (emphasis added)."

Id. at 65-66.

For these reasons, the Court concluded that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court[;]" Id. at 66, and that "this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It therefore, 'arise[s] under the ... laws ... of the United

States,' 28 U.S.C. § 1331, and is removable to federal court by the defendants[.]" Id.

Subsequently, the Supreme Court clarified its holdings in Franchise Tax Board and Metropolitan Life in Ingersoll-Rand Company v. McClendon, 498 U.S. 133 (1990), a case taken not by removal but by certiorari from the Texas Supreme Court. Ingersoll-Rand held that ERISA preempted, by both ordinary express and conflict preemption, the plaintiff employee's state law wrongful discharge claim based on allegations that his employer took the adverse action for the purpose of interfering with his rights under his pension plan. The Court stated that the employee McLelland's Texas cause of action conflicts directly with an ERISA cause of action because it "falls squarely within the ambit of ERISA § 510, which ... protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." Id. at 142-143.

Significantly, however, in adverting to the complete preemption effect of § 502(a) for violations of § 510, the Court recalled that in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, (1987), it had "explained that Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by §510[] ... [and] that 'the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the [LMRA].'" Ingersoll-Rand, 498 U.S. at 144 (*quoting and citing* Pilot Life, 481 U.S. at 52, 54-55). The Court further clarified that in Metropolitan Life, 481 U.S. at 64-67, it had again drawn on "the

parallel between § 502(a) and § 301" to conclude "that the pre-emptive effect of § 502(a) was so complete that an ERISA pre-emption defense [under § 502(a)] provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitation imposed by the 'well-pleaded complaint' rule." Ingersoll-Rand, 498 U.S. at 145. The Court then rejected the Texas court's attempt to distinguish, for preemption purposes, McClendon's wrongful discharge claim from a claim for pension benefits, stating "[n]ot only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, but there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek 'pension benefits.'" Id. at 145. Thus the Court in Ingersoll-Rand clearly indicated that it was the complete preemption under the civil enforcement provisions of § 502(a), in that they were modeled on § 301 of the LMRA, and not the ordinary preemption provisions of § 514, that justify removal of a cause of action within the ambit of § 502(a) to the federal courts. Id. at 142.

Previous panels of this Circuit, exercising great caution, have used a two-step analysis under both § 514 and § 502(a) in their complete preemption analysis. In McClelland the court noted, as had been the case in Ingersoll-Rand, that both ordinary and complete preemption were present. McClelland, 151 F.3d at 515-517. This is not uncommon given the "deliberately expansive" nature of § 514 ordinary preemption which almost always will encompass claims preempted by § 502 as well. See, e.g., Pilot Life, 481 U.S. at 46. Because we conclude, for the reasons hereinafter assigned, that

under the two-step analysis the Heimanns' causes of action fall within the scope of §§ 514 and 502(a), removal was proper under the "complete preemption" corollary to the "well-pleaded complaint rule." Hence, we are satisfied that the district court had jurisdiction of this case and that this court does as well.

## III. ISSUES

The issues presented by this appeal are:

1) whether the Heimanns' complaint states causes of action against the defendants under ERISA §§ 502 and 510, 29 U.S.C. §§ 1132 and 1140, and

2) whether the Heimanns' state law causes of action for tortious interference with contract and intentional infliction of emotional distress against IUEC and Mr. Burkett are preempted by ERISA.

## IV. STANDARD OF REVIEW

We review the dismissal of an action under Federal Rules 12(b)(6) *de novo*. Carney v. Resolution Trust Corp., 19 F.3d 950, 954 (5th Cir. 1994). In reviewing a 12(b)(6) dismissal, an appellate court may uphold the action of the trial court "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." Barrientos v. Reliance Standard Life Ins. Co., 911 F.2d 1115, 1116 (5th Cir. 1990) (*quoting* Baton Rouge Bldg. & Const. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986)).

## V. CIVIL ACTIONS UNDER ERISA § 502(a) AND § 510

The Heimanns allege that Mr. Burkett, acting for the IEUC,

intentionally and without justification incorrectly informed the plans that Mr. Heimann was engaged in "disqualifying employment;" that the false report was made maliciously and with an evil intent to harm the Heimanns by interfering with their rights to benefits under the plans; and that this wrongful interference proximately caused the plans to terminate the Heimanns' pension and health benefits. The plaintiffs' allegations also indicate that these actions interfered with Mr. Heimann's right under the plan to engage in non-disqualifying employment.

We begin our analysis by setting forth the relevant provisions of ERISA:

ERISA § 510, 29 U.S.C. § 1140, provides:

> **§ 1140. Interference with protected rights**
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 U.S.C. § 1201], or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act .... The provisions of section 502 [29 U.S.C. § 1132] shall be applicable in the enforcement of this section.

ERISA § 502 is the statute's civil enforcement mechanism. That section, in pertinent part, as set forth in 29 U.S.C. § 1132(a)(1)(B), § 1132 (a)(3), and §1132(e), provides:

> **§ 1132. Civil enforcement**
> **(a) Persons empowered to bring a civil action**
> A civil action may be brought–
> (1) by a participant or beneficiary-
> * * *
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations of (ii) to enforce any provisions of this subchapter or the terms of the plan;

* * *

**(e) Jurisdiction**

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 101(f)(1)[29 U.S.C. § 1021 (f)(1)] ....

**(f) Amount in controversy; citizenship of parties**

The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

ERISA § 3, 29 U.S.C. § 1002, defines "employee benefit plan" or "plan," "employee organization," "employer," "employee," "participant," "beneficiary," and "person" as follows:

**§ 1002. Definitions**

For purposes of this subchapter:

* * *

**(3)** The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

**(4)** The term "employee organization" means any labor union or any organization of any kind ... in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

**(5)** The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

**(6)** The term "employee" means any individual employed by

an employer.
**(7)** The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
**(8)** The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.
**(9)** The term "person" means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

It is undisputed that Mr. Heimann is a “participant” of the plans as defined in § 1002(7). He is both a former employee of an employer and a former member of a union or employee organization who is eligible to receive benefits from the plans that cover employees of his former employer and members of his former union. (In fact, the plans involved in the present case were negotiated by IUEC and National Elevator Industry, Inc., a multi-employer bargaining unit including Mr. Heimann’s former employer. We infer, therefore, that IUEC is a sponsor of the plans.) It is also undisputed that Mrs. Heimann is a “beneficiary” under § 1002(8) because she was designated by her husband or by the terms of the plans and is entitled to benefits thereunder.

It follows that the terms “participant” and “beneficiary” must be deemed to have the same meaning throughout ERISA, and that the terms include the Heimanns for all purposes of the statute. *See* Mertens v. Hewitt Associates, 508 U.S. 248, 259 (1993).

For the same reason, the defendants, the IEUC and Mr. Burkett,

are "persons" for purposes of each provision of the statute. Under the alleged facts, the IEUC is an "unincorporated association, association, or employee organization" and therefore is a "person" under the statute. § 1002(9). Mr. Burkett is included within the definition of "person" because he is an "individual." Id. Furthermore, it is undisputed that Mr. Burkett was a business agent of the IEUC and was acting in the scope and course of his employment for the union when he committed the acts that the Heimanns allege were unlawful under ERISA and the plans.

A. Scope of ERISA Civil Enforcement Provisions

Section 502(a)(3), 29 U.S.C. § 1132(a)(3)--the third of ERISA's "six carefully integrated civil enforcement provisions," Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134, 146 (1985)--allows a participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" Unlike four of § 502's six subsections, § 502(a)(3) is not focused on specific areas or types of defendants. *See* Varity Corp., 516 U.S. at 512. As the Supreme Court pointed out, § 502(a)(3) and (5) "create[] two 'catchalls,' [to protect the interests of participants and beneficiaries] providing 'appropriate equitable relief' for 'any' statutory violation[,]" whereas the others address particular evils, "i.e., the first (wrongful denial of benefits and information), the second

(fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties)." Id. Further, "these 'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Id. As well, the legislative history describes these enforcement provisions as intended to "'provide both the Secretary and participant and beneficiaries with broad remedies for redressing or preventing violations of [ERISA][.]'" Id. (*citing* S. REP. NO. 93-127, p. 35 (1973, 1 Leg. Hist. 621; H.R. REP. NO. 93-533, at 17, 2 Leg. Hist. 2364)).

Section 510 of ERISA, 29 U.S.C. § 1140, makes it unlawful for "any person" to "discriminate" against a participant or beneficiary (1) "for exercising any right to which he is entitled" under the plan, ERISA, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or (2) for the purpose of "interfering" with the attainment of any right to which such participant may become entitled under the plan or such laws. The Heimanns have set forth allegations under which most of the facts necessary to state a claim for relief unquestionably could be proved, viz., that (1) they are a "participant" and a "beneficiary" of an ERISA plan; (2) who have been intentionally and maliciously injured without cause or justification by a "person"-–the IEUC, Mr. Heimann's former union or employee organization and its employee, Mr. Burkett, an individual;(3) because of the Heimanns' "exercise of rights to which they were entitled" under the plans and ERISA, i.e., their

rights to receive plan pension and health benefits, as well as Mr. Heimann's right to engage in non-disqualifying employment (without unjustifiable interference). The only genuine question remaining is whether the defendants' alleged conduct amounted, under § 510, to unlawful discrimination against the Heimanns either (i) because of the exercise of their rights under the plans or ERISA; or (ii) for the purpose of interfering with their attainment of such rights.

We conclude that, under the alleged facts, the defendants violated provisions of both § 510 of ERISA and the Plans. Although the Supreme Court has not interpreted the term "discriminate against" in the context of § 510 of ERISA, it has construed the same words in the antiretaliation provisions of other federal statutes as meaning, in essence, to retaliate economically against. *See* Robinson v. Shell Oil Co., 519 U.S. 337, 342, 345, (1997) (Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-(a)); NLRB v. Scrivener, 405 U.S. 117, 121-122 (1972) (Section 8(a)(4) of the National Labor Relations Act, 29 U.S.C. §158(a)(4)); Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292-293 (1960) (Section 15(a)(3) of the Fair Labor Standards Act of 1938, 29 U.S.C. §215(a)(3)); *Cf*. Mertens, 508 U.S. at 255 ("And though we have never interpreted the precise phrase 'other appropriate equitable relief' [in § 502 of ERISA] we have construed the similar language of Title VII of the Civil Rights Act of 1964 (before its 1991 amendments)--"any other equitable relief as the court deems appropriate," 42 U.S.C. § 2000e-5(g)--to preclude

"awards for compensatory or punitive damages.")

The antiretaliation provision of Section 704(a), Title VII of the Civil Rights Act of 1964, makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have either availed themselves of Title VII's protections or assisted others in so doing. 42 U.S.C. § 2000-e(a). In Robinson, the Supreme Court was asked to decide whether the term "employees," as used in § 704(a), includes former employees, such that petitioner may bring suit against his former employer for post-employment actions allegedly taken in retaliation for petitioner's having filed a charge with the Equal Employment Opportunity Commission. Robinson. 519 U.S. at 339-40. The Court held that "the term 'employees,' as used in § 704(a) of Title VII, is ambiguous as to whether it includes former employees. It being more consistent with the broader context of Title VII and the primary purpose of §704(a), we hold that former employees are included within §704(a)'s coverage." Id. at 346. The Court's reasoning in refusing to construe the term "employees" narrowly as excluding former employees from the antiretaliation protection of §704(a) of Title VII is applicable by analogy to the question of whether we, in the present case, may exclude former employee-participants from antiretaliation protection and exclude unions or employee organizations from amenability for economic retaliation against former employee-participants under § 510 of ERISA. The Court stated:

> According to EEOC, exclusion of former employees from the protection of § 704(a) would undermine the effectiveness

> of Title VII by allowing the threat of post-employment retaliation to deter victims of discrimination from complaining to EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims. Brief for United States and EEOC as *Amici Curiae* 18-21.
>
> Those arguments carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions, maintaining unfettered access to statutory remedial mechanisms. *Cf*. NLRB v. Scrivener, 405 U.S. 117, 121-122, 92 S.Ct. 798, 800-01 ... (1972) (National Labor Relations Act); Mitchell v. Robert DeMario Jewelry, Ind., 361 U.S. 288, 292-293, 80 S.Ct. 332, 335-36 ... (1960) (Fair Labor Standards Act). EEOC quite persuasively maintains that it would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII--for example, complaints regarding discriminatory termination.

Robinson, 519 U.S. at 346.

In the present case, it is not only more consistent with the broader context of ERISA and the primary purpose of § 510, but also explicitly required by the definitions of “participant” and “person” in § 1002(7) and (9), that we hold that former employee-participants are protected from economic retaliation by their former unions or employee organizations and their former employers under § 510 for exercising their rights under the plans, ERISA and other laws.

Consequently, if, as the Heimanns allege, the defendants intentionally and maliciously retaliated economically against the Heimanns because of their exercise of rights under the plans and ERISA, the defendants “discriminated against” the Heimanns unlawfully under § 510 in violation of the plans and ERISA. To read § 510's use of the term “discriminate against” in any other way would require us to give the term a different meaning than the

Supreme Court has consistently assigned to it in construing previously enacted antiretaliation provisions. In all likelihood, Congress relied on the Supreme Court's interpretations of other federal antiretaliation provisions in drafting and enacting § 510 of ERISA. We see no good reason to read the term "discriminate against" eccentrically in the present statute. "The authority of courts to develop a 'federal common law' under ERISA, *see* Firestone, 489 U.S. at 110, is not the authority to revise the text of the statute." Mertens, 508 U.S. at 258.

The Supreme Court in Mertens announced precepts that we must follow in construing and applying ERISA. Two of them are: (1)"[L]anguage used in one portion of a statute ... should be deemed to have the same meaning as the same language used elsewhere in the statute[,]"; and (2) "[V]ague notions of a statute's 'basic purpose' are ... inadequate to overcome the words of its text regarding the specific issue under consideration. Id. at 260 (*citing* Pension Benefit Guaranty Corporation v. LTV Corp., 496 U.S. 633, 646-647 (1990)). This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests--not all in favor of potential plaintiffs. Id. at 261-262 (*citing* Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 54-56 (1987))"

Accordingly, we do not find determinative or helpful the

flawed but frequently quoted [2] dicta of West v. Butler, 621 F.2d 240 (6th Cir. 1980), that ERISA's legislative history indicates "that the [§ 510] prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights[,]" id. at 245, and "that discrimination, to violate § 510, must affect the individual's employment relationship in some substantial way." Id. at 245-246. Recently, the Sixth Circuit in Mattei v. Mattei, 126 F.3d 794 (6th Cir. 1997) reconsidered and limited the West v. Butler dicta to the confines of the statute, holding that the antiretaliatory protection of § 510 is not restricted to shielding only active employees from economic sanctions. As the Mattei court observed:

> [I]n the [West] court's statement that "Congress designed § 510 primarily to protect the employment relationship," the use of the word "primarily" necessarily means that, in the court's view, Congress intended that the statute sometimes reach beyond the employment relationship. The overarching goal of the statute was to protect rights conferred by an employee benefit plan, and the court recognized that the most common, but not the only possible, attack on those rights would be through the employment relationship. Notably, the committee report quoted in West, 621 F.2d at 245, evinced Congress's desire for §510 to protect pension rights and expectations from "economic sanctions"--a broad description not limited to the sphere of employment.

Id. at 800. *See also*, Clark v. Resistoflex Co., 854 F.2d 762, 770 (5th Cir. 1988) ("Resistoflex points to the Sixth Circuit's

---

[2] *See* ,e.g., Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan, 24 F.3d 1491 (3d Cir. 1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1099 (1995); McGrath v. Auto-Body North Shore, Inc., 7 F.3d 665 (7th Cir. 1993); Deeming v. American Standard, Inc., 905 F.2d 1124 (7th Cir. 1990).

statement in West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980), that '[t]he legislative history [of § 510 of ERISA] reveals that the [statute's] prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.' As we read this passage, however, the qualifying word 'primarily' leaves room for a construction that extends section 510 protection to vested employees as well.")

In our own review of the ERISA historical materials we found nothing to suggest that Congress intended to protect the pension and welfare benefits of active employees any more strenuously than that of retirees. Instead, Congress's aim to safeguard equally the rights of all participants, which by § 1002(7)'s definition includes former employees and former union members, is as evident in the legislative history as it is in ERISA's statement of its policy, viz., "to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information ..., by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." § 1001(b). *See*, e.g., S. REP. NO. 93-127, at 35 (1973) (describing Senate version of enforcement provisions as intended to "provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of [ERISA]"); H.R. REP. NO.

93-533, at 17 (describing House version in identical terms). ERISA's basic purpose is "to strengthen and improve the protections and interests of participants and beneficiaries of employee pension and welfare plans." S. REP, NO. 93-127. *See also*, H.R. REP. NO. 95-533, stating that the "primary purpose of the bill is the protection of individual pension rights[.]" ERISA's basic purposes, plain words and legislative history, require a reading of §§ 510 and 502(a)(3) that provides all participants and beneficiaries, including former employees, former union members, and retirees with a remedy for economic retaliation because of participants' and beneficiaries' exercise of pension plan rights. *Cf*. Varity Corp, 516 U.S. at 512, 513.

Even if we could accept West v. Butler's notion of the primary purpose of § 510 as a plausible interpretation of part of the legislative history, the West court's leap to the conclusion that § 510 makes discrimination against those who exercise ERISA rights unlawful only when it affects an ongoing employment relationship is without support in the text or the legislative history of ERISA. To read § 510 to exclude retirees from its protection would require either that we give "participant" a different meaning in § 510 than in § 1002(7) and elsewhere in ERISA or that we judicially exclude retirees, i.e., former employees, from all rights, information, remedies and access to court afforded other participants by ERISA. We cannot do either because, as the Supreme Court has admonished, courts lack authority to revise the text of the statute and should give language used in one portion of a statute the same meaning as

the same language has when used elsewhere in the statute. Mertens, 508 U.S. at 258, 260.

B. Pleading Requirements of § 502

Defendants argue that, even construing the Heimanns' petition liberally, it fails to allege facts from which a reasonable trier of fact could find or infer that the defendants specifically intended to retaliate against the Heimanns for their exercise of rights under the Plans or to interfere with any of their rights under the Plans. We disagree. Under ERISA § 510 plaintiffs are required to prove by a preponderance of the evidence that the defendants specifically intended to commit acts which violated the provisions of ERISA or the terms of the plan. *See, e.g.,* Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 881 (9th Cir. 1989) (employee must prove employer's specific intent to retaliate for employee's exercise of rights under plan), *cert. denied*, 498 U.S. 814 (1990); Clark v. Resistoflex Co., a Div. of Unidaynamics Corp., 854 F.2d at 770 (employee must prove specific intent to interfere with employee's pension rights); Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (section 510 claimant must prove specific intent to engage in activity prohibited by section 510).

In their complaint, the Heimanns alleged that: (1) Mr. Heimann "made contributions to The National Elevator Industry Pension Fund ('Pension Fund'), and The National Elevator Industry Health Benefit Plan ('Health Benefit Plan')"; (2) "Louis Heimann retired from Otis Elevator Company in January 1992 ... [and] [a]t that time Pension Fund began paying pension benefits to Louis Heimann and Health

Benefit Plan continued providing medical and dental insurance to the Heimanns"; (3) "Louis Heimann's employment by the University of Texas as an elevator inspector does not constitute disqualifying employment"; (4) "Burkett, in his capacity as Business Representative of Local 133, and therefore as the agent of IUEC, and on his own behalf, communicated to the Plans that Louis Heimann was engaged in disqualifying employment and therefore caused the Plans to suspend his pension benefits and terminate medical and dental insurance coverage for the Heimanns"; (5) "This communication with the Plans constituted interference with the contract between the Heimanns and the Plans"; (6) "In interfering with the contract between the Heimanns and the Plans IUEC and Burkett acted willfully and intentionally, and with a reckless disregard for the rights of the Heimanns"; (7) "As a proximate result of the interference with the Heimann's [sic] contractual rights under the Plans by IUEC and Burkett, the Plans suspended the pension plan payments which it was making to Louis Heimann and terminated the medical and dental insurance coverage being provided to the Heimanns."

Federal Rule of Civil Procedure 9(b), pertaining to pleading special matters, provides, in pertinent part, that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See* Barrientos v. Reliance Standard Life Ins. Co., 911 F.2d 1115 (5th Cir. 1990); Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579, 589 (5th Cir. 1967); D'Allessandro v. Bechtol, 104 F.2d 845 (5th Cir. 1939). The rule recognizes the

unworkability and undesirability of requiring specificity in pleading a condition of mind; describing a state of mind with exactitude is inherently difficult and would lead to complexity and prolixity in pleadings. 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1301 at 674 (2d ed. 1990).

From the above facts alleged in the complaint, it can reasonably be inferred that the Heimanns had protected rights under the plans; Mr. Heimann exercised his right under the plan to engage in non-disqualifying employment; IUEC and Burkett falsely informed the Plans that Mr. Heimann was engaging in disqualifying employment; IUEC and Burkett had the specific intent to interfere with the Heimanns' benefits and Mr. Heimann's right to engage in non-disqualifying employment; IUEC and Burkett's action caused the unjust termination of these rights. This is sufficient to state a claim under ERISA.

Federal Rules of Civil Procedure 8(a)(2), 8(e) and 8(f) state that technical forms of pleading are not required, that pleadings ought to be construed liberally so as to do substantial justice, and most important of all, they substitute the requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" for the technical formula, such as "facts constituting a cause of action," which typified the preexisting codes. WRIGHT & MILLER, *supra*, § 1202 at 68 (2d ed. 1990). Hence, a complaint is not subject to dismissal with prejudice unless it appears with certainty that no relief can be granted under any set of facts that can be proved in support of its allegations. Id. at

145 (*citing* Fernandez-Montes v. Allied Pilots Assoc., 987 F.2d 278 (5th Cir. 1993)); U.S. v. Uvalde Consol. Indep. Sch. Dist., 625 F.2d 547 (5th cir. 1980). The use of the term "specific intent" or other ERISA terminology is not sacramental or necessary to the pleading of a cause of action under § 502(a). The Supreme Court has held that state causes of action may fall squarely within the ambit of ERISA §§ 502(a) and 510 even when the state action purports to assert only a remedy available under state law using only state law theories and terminology. *See* Metropolitan Life Insurance Company v. Taylor, *supra* and Ingersoll-Rand Company v. McClendon, *supra*.

The Heimanns' petition's allegation of facts also entitle them to bring a civil action for declaratory judgment to clarify and enforce their rights under the terms of the plan. Consequently, the Heimanns are entitled to bring a civil action under § 502(a)(1)(B) for those purposes.

A civil action may be brought by a participant or beneficiary under §502(a)(1)(B) "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" The purpose of § 502(a)(1)(B) is to provide the means by which a participant or beneficiary may enforce his rights to benefits and any other plan-created rights. Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 357 (3d Cir. 1995). For example, an ERISA welfare benefit plan participant may seek declaratory judgment to clarify his rights under the plan. Camarada v. Pan American World Airways, 956 F. Supp. 299 (E.D.N.Y. 1997).

The Declaratory Judgment Act provides that, with exceptions not here pertinent, “in a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.” 28 U.S.C. § 2201. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by the declaratory judgment. 28 U.S.C. § 2202. Under the Act a court has the power, upon a subsequent petition, to grant coercive or further declaratory relief in connection with a final declaratory judgment theretofore entered. Shumaker v. Utex Exploration Co., 157 F. Supp 68 (D.Utah 1957); Univ. of New Hampshire v. April, 347 A.2d 446 (N.H. 1975).

“Proceedings under the Declaratory Judgment Act are governed by the same pleading standards that are applied in other federal civil actions.” 5 WRIGHT & MILLER, *supra*, §1238 at 285 (footnotes omitted citing authorities). The plaintiff must allege a “justiciable controversy” in order to state a claim for declaratory relief. Id. (*citing* Maryland Gas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510 (1941)); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461 (1937); Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, etc., 137 F.2d 176 (5th Cir. 1943) *aff'd* 321 U.S. 590 (1944). The complaint must disclose “a legal right, relation, status, or interest claimed by plaintiff over which a

dispute with the defendant has arisen." 5 WRIGHT & MILLER, *supra*, at 287 (*citing* Paper Carriers Union No. 450 v. Pulitzer Pub. Co., 309 F.2d 716 (8th Cir. 1962)); *see also* Aralac, Inc. v. Hat Corp. of America, 166 F.2d 286 (3rd Cir. 1948). The Declaratory Judgment Act is a procedural statute providing an additional remedy in which the federal courts already have jurisdiction, and should be given a liberal interpretation. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, *supra*, 137 F.2d at 179.

The Heimanns' complaint discloses that they have legal rights to pension and health benefits under the plans, and that Mr. Heimann has the right to engage in non-disqualifying employment without being threatened or harmed with loss of benefits for himself and his wife; that a dispute has arisen with the defendants over whether the employment in which he wishes to engage is "disqualifying employment" under the plan and whether Mr. Heimann can pursue such employment without impairing his and his wife's rights to benefits under the plans; that the defendants have already once acted, and may act again, to deprive him and his wife of benefits from the plans and to deprive him of his right under the plan to pursue such non-disqualifying employment. Thus, the Heimanns' complaint fulfills the requisites of § 502(a)(1)(B) of ERISA and the Declaratory Judgment Act for stating a cause of action for declaratory relief clarifying and enforcing their rights under the plans, viz., legal rights under the terms of the plans claimed by plaintiffs over which a dispute has arisen with the defendants. In adopting the Declaratory Judgment Act, it was

Congress' intent to prevent avoidable damages from being incurred by a person who is not certain of his rights, and to afford him an early adjudication of his rights without waiting until his adversary takes injurious action against him. *See* 5 WRIGHT & MILLER, *supra*, at 288. It is evident that Congress was of the same mind when it enacted § 502(a)(1)(B), giving every participant and beneficiary the right to bring a civil action to clarify and enforce his rights under the terms of the plan. Under the facts alleged declaratory judgment can and should be granted clarifying and enforcing the Heimanns' rights under the Plans to benefits and to engage in non-disqualifying employment. The Heimanns are entitled to early adjudication of these rights without risking further retaliation or interference by the defendants.

In addition to their main argument that the Heimanns failed to state a claim for relief, the defendants contend that the Heimanns' suit must be dismissed because they did not specify the particular type of equitable relief to which they are entitled. However, Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Doss v. South Central Bell Tel. Co., 834 F.2d 421, 423, n.3 (5th Cir. 1987) ("[D]ismissal was not proper. The court stated that it dismissed those claims because the plaintiff had requested legal relief rather than the equitable relief authorized by Title VII. However, demand of an improper remedy is not fatal to a party's pleading if the statement of the claim is otherwise sufficient to show entitlement to a different form of relief.")

(*discussing* Hildebrand v. Honeywell Co., 622 F.2d 179, 181 (5th Cir. 1980)); Southpark Square Ltd. v. City of Jackson, 565 F.2d 338, 341 n.2 (5th Cir. 1977); Thompson v. Allstate Ins. Co., 476 F.2d 746, 749 (5th Cir. 1973) ("[A] motion to dismiss for failure to state a claim should not be granted 'unless it appears to a certainty that the plaintiff would be entitled to no relief under any set of facts which could be proven in support of his claim.'"); *cf*. Carter v. South Central Bell, 912 F.2d 832, 841 (5th Cir. 1990). *See also* FED.R.CIV.P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.") Accordingly, we hold that the Heimanns' claim, while failing to specifically request equitable relief, is otherwise sufficient to show entitlement to such relief.[3]

## VI. ERISA ORDINARY PREEMPTION UNDER § 514 and § 502(a)

ERISA is a comprehensive statute designed "to protect ... the interests of participants ... and ... beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries ... and ... providing for appropriate remedies ... and ready access to the Federal courts." Varity Corp., 516 U.S. at

[3] The dissent argues that because the Heimanns did not request leave to amend in their initial brief, they waived the issue on appeal, citing Light v. Blue Cross and Blue Shield of Ala., Inc., 790 F.2d 1247, 1248 n.2 (5th Cir. 1986). Light is inapposite, however, because the Heimanns did not need to amend their petition due to the fact that they have stated a cause of action under ERISA based on their factual allegations. *See* Doss, 834 F.2d at 424 (citing Hildebrand, 622 F.2d at 181).

513 (*citing* ERISA § 2(b), 29 U.S.C. § 1001(b)). *See also* Shaw v. Delta Air Lines, 463 U.S. 85, 90 (1983). Section 514(a) of ERISA, 29 U.S.C. § 1144(a), specifically provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan ...." (Emphasis added). The Supreme Court has "endeavored with some regularity to interpret and apply the 'unhelpful text' of ERISA's pre-emption provision." Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 323 (1997). The Court's cases have acknowledged that ERISA's pre-emption provision is "clearly expansive," has "a broad scope," "expansive sweep," is "broadly worded," "deliberately expansive," and "conspicuous for its breadth." Id. (Citations omitted). The Court's efforts have yielded a two-part inquiry: a law relates to a covered employee benefit plan for purposes of § 514(a) if it (1) has a connection with or (2) reference to such a plan. Id. Additional insight was provided by the Court's observation in John Hancock Life Insurance v. Harris Bank, 510 U.S. 86, 99 (1993) that "we discern no solid basis for believing that Congress, when it designed ERISA, intended fundamentally to alter traditional preemption analysis."[4]

---

[4] *See also* Dillingham Constr., 519 U.S. at 336, 117 S.Ct. at 843 (1997)(Scalia, J., with Ginsburg, J., concurring):

> ...[t]he 'relate to' clause of the pre-emption provision is meant, not to set forth a test for pre-emption, but rather to identify the field in which ordinary field pre-emption applies–namely, the field of laws regulating 'employee benefit plan[s] described in section 1003(a) of this title and not exempt under section 1003(b) of this title,' 29 U.S.C. § 1144(a). [In view of][o]ur new approach to ERISA preemption ... set forth in John

Obviously preemption under § 514 is not without its limits. *See, e.g.*, Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987). However in the present case, as in Ingersoll-Rand, we have no difficulty finding the state law causes of action preempted because "the existence of a pension plan is a critical factor in establishing liability" under state law. Ingersoll-Rand, 498 U.S. at 139.

Also, as in Ingersoll-Rand, even if there had been no express preemption, the Heimanns' state causes of action are preempted because they conflict directly with an ERISA cause of action.[5] Ingersoll-Rand., 498 U.S. at 142. With respect to ERISA causes of action, the Supreme Court has noted that "'"[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected" by § 510 of ERISA "due regard for the federal enactment requires that state jurisdiction must yield."'" Id. at 145 (*quoting* Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409, n.8 (1988)).

---

> Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank ... it accurately describes our current ERISA jurisprudence to say that we apply ordinary field pre-emption, and, of course, ordinary conflict pre-emption ....

[5]State law is preempted to the extent it actually conflicts with federal law; that is, when it is impossible to comply with both state and federal law or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. *See, e.g.*, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963); Hines v. Davidowitz, 312 U.S. 52, 67 (1941); Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984).

Accordingly, we conclude that because the Heimanns have stated claims upon which relief may be granted under ERISA §§ 502(a) and 510 that conflict with their causes of action under Texas law for tortious interference with contract and intentional infliction of emotional distress, such state law causes of action are preempted by ERISA.

## VII. CONCLUSION

For the reasons assigned, we affirm the district court's dismissal of the appellants' state law tort claims, but reverse the district court's dismissal of the appellants' causes of action under ERISA §§ 502(a) and 510, and remand this case for further proceedings.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

The majority decides that the Employee Retirement Income Security Act of 1974 ("ERISA") completely preempts the claims of Louis and Lou Heimann ("the Heimanns") and that the Heimanns allege facts legally sufficient to state a claim under ERISA. I agree with the first holding, but disagree with the second one. Accordingly, I concur in part and dissent in part.

I

The Heimanns sued the International Union of Elevator Constructors ("IUEC") and Ken Burkett, the Business Representative for IUEC Local No. 133, in Texas court. In their petition, they averred that their benefits from The National Elevator Industry Health Benefit Plan ("Plan") and Louis Heimanns' benefits from The National Elevator Industry Pension Fund ("Fund") were discontinued after Burkett misrepresented to the Plan and the Fund that Louis Heimann was engaged in disqualifying employment.[6] Based on this contention, the Heimanns charged IUEC and Burkett with intentional infliction of emotional distress and tortious interference with a contract.

IUEC and Burkett removed the case to federal district court, alleging that ERISA and the Labor Management Relations Act ("LMRA") preempted the Heimanns' claims.[7] The Heimanns responded with a motion to remand for lack of jurisdiction. The district court denied the motion, finding ERISA to preempt the claims.[8]

IUEC and Burkett subsequently filed a motion to dismiss the Heimanns' claims as preempted by ERISA. The Magistrate Judge, to whom the motion was referred, recommended dismissal. The

---

[6] During his career, Louis Heimann and his employers, Otis Elevator Company and Montgomery Elevator Company, "each [had] made contributions to the Plan and the Fund in accordance with provisions of the applicable Standard Agreements which were in effect from time to time, and which had been negotiated by IUEC an National Elevator Industry, Inc., a multi-employer bargaining unit."

[7] Following removal, the action against IUEC and Burkett was consolidated with an action that the Heimanns had filed against the Plan and the Fund. The Heimanns later settled with the Plan and the Fund.

[8] The district court expressed no opinion on the LMRA's effect on the claims.

Heimanns objected. At the end of their objections, they stated, "If the Court is of the opinion that [we] . . . should specifically plead a claim under [ERISA] . . ., then [we] . . . request leave to filed an Amended Complaint in this matter." The district court agreed with the Magistrate Judge, and granted the motion to dismiss. In doing so, it failed to act on the Heimanns' request for leave to amend their pleading. "Although Plaintiffs' motion to remand was denied . . ., Plaintiffs have not sought leave of Court to amend their complaint to add a claim under ERISA section 502(a)," it mistakenly stated. The Heimanns timely appealed.

II

The Heimanns first challenge the denial of their motion to remand for lack of jurisdiction, arguing that ERISA does not preempt their claims. We review the district court's refusal to remand *de novo*. *See McClelland v. Gronwaldt*, 155 F.3d 507, 511 (5th Cir. 1998).

District courts possess jurisdiction over actions removed from state court that include one or more state-law claims completely preempted by ERISA. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999). ERISA completely preempts state-law claims that fall within (1) its express preemption provision, *see* 29 U.S.C. § 1144(a) (section 514(a)),[9] and (2) its civil enforcement provision, *see id.* § 1132(a) (section 502(a)).[10] *See McClelland*, 155 F.3d at 517-19. The plaintiff's well-pleaded complaint ordinarily determines whether or not a state-law claim meets

---

[9] Section 514(a) declares that ERISA (subject to several exceptions inapplicable here) "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to regulation under ERISA ("ERISA plan"). 29 U.S.C. § 1144(a). As such, it establishes that ERISA overrides, among other things, state-law claims raising factual issues that "are intricately bound up with the interpretation and administration of an ERISA plan." *Hubbard v. Blue Cross & Blue Shield*, 42 F.3d 942, 946 (5th Cir. 1995). Courts usually characterize the type of preemption arising under section 514(a) as conflict, defensive, or ordinary preemption. *See Butero v. Royal MacCabes Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999); *Giles v. NYLCare Health Plans*, 172 F.3d 332, 337 (5th Cir. 1999).

[10] We previously have "note[d] that there exists some ambiguity in the caselaw as to whether the scope of complete preemption is limited only to those claims falling within section 502(a)(1)(B), or whether complete preemption encompasses all claims falling within the scope of section 502(a)." *McClelland v. Gronwaldt*, 155 F.3d 507, 517 n.34 (5th Cir. 1998).

the two criteria for complete preemption.[11] *See id.* at 512 n.11.

I agree with the majority that the Heimanns' claims satisfy our test for complete preemption. The claims come within ERISA's express preemption provision. To resolve them, the fact-finder must decide: (1) whether or not the IUEC, through Burkett, notified the Plan and the Fund that Louis Heimann was engaged in disqualifying employment; (2) whether or not Louis Heimann was engaged in disqualifying employment; and (3) whether or not the Plan and the Fund discontinued benefits because the IUEC, through Burkett, told them that Louis Heimann was engaged in disqualifying employment.[12] Because these issues are intricately bound up with the interpretation and administration of an ERISA plan, the claims relate to an ERISA plan, and therefore are subject to ordinary preemption. *See Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 946 (5th Cir. 1995) (holding that state-law claim alleging that a third party caused the denial of benefits under an ERISA plan is subject to ordinary preemption). The claims also fall within the scope ERISA's civil enforcement provision in that they seek relief for an alleged wrongful denial of benefits due under ERISA plans. *See* 29 U.S.C. § 1132(a)(1)(B). Accordingly, the district court did not err in denying the Heimanns' motion to remand for lack of jurisdiction.[13]

III

The Heimanns also dispute the district court's dismissal of their claims as preempted by ERISA. We review a dismissal for failure to state a claim *de novo*. *See Doe ex rel. Doe v. Dallas*

---

[11] For discussion of the well-pleaded complaint rule, see *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55, ___ (1987) (ERISA case).

[12] Based on the allegations in the Heimanns' petition, I conclude that the Plan and the Fund are ERISA plans, *see* 29 U.S.C. § 1002(1)-(3) (defining the different kinds of ERISA plans); *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257-59 (D.C. Cir. 1994) (deciding whether or not a plan meets ERISA's definition of "pension plan"); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 976-78 (5th Cir. 1991) (deciding whether or not a plan meets ERISA's definition of "employee welfare benefit plan"), Louis Heimann is a participant in the Fund and the Plan, *see* 29 U.S.C. § 1002(7) (defining "participant"), and Lou Heimann is a beneficiary of the Plan, *see id.* § 1002(8) (defining "beneficiary").

[13] Unlike the majority, I see no reason to provide an additional ground for affirming the denial of the motion to remand for lack of jurisdiction. *See Boggs v. Boggs*, 520 U.S. 833, 841, 117 S. Ct. 1754, 1760, 138 L. Ed. 2d 45, ___ (1997).

*Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). In deciding whether or not a complaint states a valid claim for relief, we consider its allegations in the light most favorable to the plaintiffs and resolve every doubt in their favor. *See Lowery v. Texas A & M Univ.*, 117 F.3d 242, 247 (5th Cir. 1997).

I disagree with the majority that the Heimanns have stated valid claims for relief. IUEC and Burkett sought dismissal of the Heimanns' claims as subject to ordinary preemption after the district court decided not to remand. Having already found the claims to come within ERISA's express preemption provision in determining that complete preemption provided a jurisdictional basis for removal, the district court granted the motion to dismiss. This disposition was entirely proper. *See Butero v. Royal MacCabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999) (ERISA case) (affirming the district court's finding of jurisdiction based on complete preemption and subsequent dismissal (with leave to refile) of the plaintiff's claims as subject to ordinary preemption) (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 517 (5th Cir. 1998), for the proposition that "[i]f the plaintiff's claims are superpreempted [*i.e.*, completely preempted], then they are also defensively preempted").

I appreciate that affirming the dismissal of the claims seems harsh in light of the Heimanns' motion for leave to amend their pleading to allege an ERISA claim. *See* JAMES F. JORDEN ET AL., HANDBOOK ON ERISA LITIGATION § 2.07[A] (2d ed. Supp. 1999) ("If [ordinary preemption is] raised by a motion to dismiss, counsel should anticipate that the plaintiff may be afforded one or more opportunities to amend the complaint, including the opportunity to redraft factual allegations and to add a claim for relief under ERISA."); *see also Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977) (per curiam) ("Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim."). However, the Heimanns have chosen not to make the district court's inaction on their motion for leave to amend

an issue on appeal.[14] Faced with this situation, we must let the dismissal stand. *See Light v. Blue Cross & Blue Shield of Ala., Inc.*, 790 F.2d 1247, 1248 n.2 (5th Cir. 1986) (affirming grant of summary judgment on claims subject to ordinary preemption) (refusing to consider the plaintiffs' argument that the district court erred in failing to allow them to amend their complaint to state a claim under ERISA because the argument was not raised in the plaintiffs' initial brief).

IV

I conclude that the district court was correct not only in refusing to remand for lack of jurisdiction, but also in subsequently dismissing the state-law claims comprising this action.

Accordingly, I concur in part and dissent in part.

---

[14] The majority holds that the Heimanns do not need to amend because their petition pleads facts legally sufficient to state a claim under ERISA. In support of this determination, it cites the longstanding rule that a complaint need not correctly categorize legal theories giving rise to the claims, but only must allege facts upon which relief can be granted to survive a motion to dismiss for failure to state a claim. *See Rathborne v. Rathborne*, 683 F.2d 914, 917 n.8 (5th Cir. 1982). That rule is inapplicable here. Pleading facts that bring one's state-law claims within ERISA's express preemption provision, as the Heimanns have done, does not have the effect of transforming the state-law claims into ERISA claims. It has the effect of extinguishing the state-law claims. *See* 29 U.S.C. § 1144(a); *see also* JAMES F. JORDEN ET AL., HANDBOOK ON ERISA LITIGATION § 2.03 (2d ed. Supp. 1999) ("The legislative history behind [ERISA's express preemption provision] . . . makes it clear that Congress intended to supplant all state regulation of employee benefit plans with a uniform system.").