**Yvonne M. SCHLENZ, Plaintiff,**

v.

**UNITED AIRLINES, INC., a corporation; Norm Reeder, an individual; Lou Gusto, an individual; and Cecil Short, an individual, Defendants.**

**No. C 87–2262 TEH.**

United States District Court, N.D. California.

Jan. 19, 1988.

James Geagan, Hobert, Finger, Brown, Cox & Molligan, San Francisco, Cal., for plaintiff.

Cynthia Plevin & Kathy Steel, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., Robert Casey, Chicago, Ill., for defendants.

ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on defendant United Airlines' motion for par-

tial summary judgment on plaintiff's pendant state law claims pursuant to rule 56 of the Federal Rules of Civil Procedure. Having carefully reviewed the record presented, without oral argument, we conclude that plaintiff has pleaded viable pendant state law claims. Consequently, defendants are not entitled to judgment as a matter of law. Therefore, good cause appearing, defendant's motion is hereby denied.

## I. Factual and Procedural Background.

This is essentially a wrongful termination suit brought by plaintiff Yvonne Schlenz against her former employer, United Airlines, Inc. ("United").[1] Plaintiff seeks to recover lost pension benefits and damages caused by United's allegedly wrongful conduct in discharging her without cause. The underlying facts are as follows.

Plaintiff was initially hired by United in July of 1974 as a data processor. She was quickly promoted, in August of 1975, to the more highly paid position of Maintenance Planning Analyst, and she remained in this job until 1981. At that time, in response to severe economic difficulties brought on by the recession, United initiated a special layoff and furlough program for the purpose of cutting costs by reducing its workforce. Under this program, plaintiff, along with many other employees, was offered the options of accepting either (1) a layoff from her maintenance planning analyst position, or, alternatively, (2) a transfer to a lower paying and less responsible job. Plaintiff accepted the latter option, and in June, 1981, was transferred to the substantially lower paying job of General Clerk.

The most attractive feature of this furlough program was that participants retained recall rights to their former positions for a five year period, to be exercised according to company seniority. Based on her furlough date, plaintiff had recall rights to her maintenance planning analyst job until June, 13, 1986.

In November, 1983, in the face of continued economic uncertainty, United announced more cost cutting measures including a Termination Incentive Program ("TIP"). Under this program, employees with at least five years service could voluntarily terminate their employment with United in exchange for a lump sum payment equivalent to a years salary. The purpose of this program was to reduce company expenses by retiring more senior employees in order to replace them with newer, and therefore lower paid personnel.

Plaintiff, who had been at United for more than nine years by then, was eligible for the TIP program, but in December 1983 declined an offer to participate. She states she explicitly rejected this offer to preserve her eligibility for certain benefits that she would have been entitled to on her approaching tenth anniversary with the company, including vestiture in the company pension plan, and an increase in her yearly vacation pay from three to four weeks. Further, Schlenz contends that at that time she believed she would soon be recalled to her former position.

In March, 1984 Schlenz was discharged from her employment with United, ostensibly because of poor attendance. Apparently, Schlenz' superiors had previously informed her that her absenteeism rate was unacceptably high and could result in termination. The parties vigorously dispute the actual severity of plaintiff's absenteeism, as well as whether she had an adequate opportunity to correct the problem, and whether her attendance in fact did improve sufficiently after being given a final warning.[2]

---

**1.** The parties have stipulated to the dismissal of all of the individual defendants originally named in plaintiff's complaint.

**2.** These factual issues are germane to the merits of plaintiff's claim that United's reasons for firing her were pretextual. They are immaterial, however, to the Court's consideration of defendant's current motion for summary judgment of plaintiff's state law claims, which rests entirely on defendant's federal preemption defense. Therefore, though the parties have extensively briefed the Court on these issues, we decline to state any view about them.

It is undisputed, however, that plaintiff was 47 days short of her ten year anniversary with United on the date she was discharged. Schlenz also states that she had been advised she was due to be recalled to her former position the following June.

Following her discharge, plaintiff filed a wrongful discharge action against United in state court under California law on April 2, 1985. Substantial, relevant discovery has been done in connection with that suit.

Plaintiff then filed the instant federal court action based on the same underlying facts on May 6, 1987. Plaintiff's federal complaint states five causes of action against United. The first three causes of action arise directly under the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 *et seq.* The fourth and fifth causes of action assert pendant state law wrongful discharge claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. *The Instant Motion for Summary Judgment*

United moves for summary judgment on plaintiff's pendant state law claims pursuant to the doctrine of federal preemption on the ground that these claims are preempted ERISA. Summary judgment on a claim or defense is appropriately granted only where no genuine issue of material fact remains for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 677 (9th Cir.1984). Under this standard, we must view the evidence in the light most favorable to the non-moving party, in this case plaintiff. United may only prevail if, on the record taken as a whole, a rational trier of fact could not reach a verdict in plaintiff's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). For the reasons set forth below, the Court concludes that a genuine factual dispute remains for trial, precluding a grant of summary judgment.

## III. *The Scope and Purpose of ERISA*

ERISA is a remedial statute through which Congress established a comprehensive federal scheme to regulate the creation and administration of employee welfare benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). The term "employee benefit plan", as defined by the statute, broadly includes any plan, fund or program maintained for the purpose of providing employees with a wide spectrum of benefits such as pension, medical, accident, disability, death, unemployment, or vacation benefits. 29 U.S.C. Sec. 1002(1). Wages or salary compensation are not included in this definition. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1505 (9th Cir.1985).

The dual purposes of this legislation are to protect the interests of: (1) employees in obtaining vested benefits under established pension and welfare plans; and (2) employers from conflicting and inconsistent state and local regulation of such plans. *Scott v. Gulf Oil Corp., supra*, 754 F.2d at 1501, citing *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA protects the interest of employees in the integrity of their benefit plans by imposing requirements on employers for reporting, disclosure, participation rights, vesting of rights to benefits, funding, fiduciary responsibilities and claims procedures. See 29 U.S.C. Secs. 1021–1145. ERISA simultaneously protects employers from a potential web of inconsistent state regulations through the unique feature of an express and expansive preemption provision which displaces all state laws that "relate to" employee pension and welfare benefit plans. ERISA Section 514(a), 29 U.S.C. Sec. 1144(a).

To determine the extent of ERISA's preemption provision, the Court must ascertain congressional intent. The Supreme Court, on numerous occasions, has considered the scope of ERISA's virtually unique preemption provision, and has observed that "the express preemption provisions of ERISA are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern."

*Pilot Life Ins. Co. v. Dedeaux, supra,* 107 S.Ct. at 1552. Further, the statute's legislative history and its Declaration of Policy show that Congress was chiefly concerned with establishing uniform legislation for the administration of private pension and employee welfare benefit plans because the operation of such plans is increasingly interstate. See H.Rep. No. 533, 93d Cong. (1974); 29 U.S.C. Sec. 1001. Indeed, as the Supreme Court discussed in *Shaw v. Delta Airlines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the original ERISA bill contained a limited preemption clause that was rejected by the Conference Committee in favor or the current, broad "relate to" language of Section 514(a), 29 U.S.C. Sec. 1144(a). See H.R.Conf.Rep. No. 1280, 93d Cong. 383 (1974); S.Conf.Rep. No. 1090, 93d Cong. 383 (1974).

In keeping with these purposes, the Supreme Court has broadly interpreted ERISA's "relate to" language according to its common sense meaning. Under Section 514(a), "a state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, supra,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Despite the simplicity of this definition, the lower courts have had considerable problems applying the "relate to" language of Section 514(a) uniformly. In view of these difficulties, last term the Supreme Court again addressed the scope of ERISA's preemption clause in two important decisions. *Pilot Life Ins. Co. v. Dedeaux, supra,* —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Fort Halifax Packing Co. Inc. v. Coyne,* —— U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

*Pilot Life* was a relatively straightforward case. Plaintiff brought suit against his former employer under common law tort and contract theories for improper processing of benefit claims under a plan admittedly regulated by ERISA. The defendant removed plaintiff's case to federal court on the ground that these common law claims were preempted by ERISA. In holding that removal was proper, the Court reaffirmed that the "relate to" language of Section 514(a) must be given its broad com-

mon sense meaning, and emphasized that this clause is not limited to state laws specifically designed to affect employee benefit plans, but extends to common law causes of action as well. *Pilot Life,* 107 S.Ct. at 1553. The Court further held that plaintiff's tort and contract claims were expressly preempted by ERISA because they arose directly out of the employers maladministration of a covered plan, and thereby stated a claim for relief directly under ERISA. *Id.*

In *Fort Halifax Packing Co.,* the Court considered whether ERISA preempted a state statute which required employers to pay minimum severance benefits to certain long term employees in the event of a plant closing. The Company argued that any state law pertaining to a type of employee benefit listed in ERISA necessarily regulates an employee benefit plan and is therefore preempted. *Fort Halifax,* 107 S.Ct. at 2215. The Court rejected this argument on two grounds. First, the Court pointed out that the plain language of Section 514(a), though admittedly broad, "does not refer to state laws relating to 'employee benefits,' but only to state laws relating to 'employee benefit plans.'" *Id.*

Second, the Court explained that this construction of the statute is compelled by the underlying congressional purpose of shielding employers from inconsistent state regulation of employee benefit plans, because only a benefit plan "embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." *Id.* at 2217.

On these grounds, the Court held that the severance benefit law did not relate to or regulate a plan within the meaning of ERISA, and was not preempted, because it merely required employers to make a one time lump sum payment to a class of employees only if certain events occurred. *Id.* at 2218. The Court explained that the statute did not implicate the regulatory concerns of ERISA itself because it did not create a need for an ongoing administrative program for processing claims or paying

benefits. *Id.* at 2219. The Court concluded:

> If a State creates no prospect for conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local and social concerns.

*Id.* at 2221.

The import of these cases is that though ERISA preemption is indeed broad, it is not all encompassing. See also *Scott v. Gulf Oil, supra,* 754 F.2d 1499, 1504 (9th Cir. 1985). The plain language of the statute, its legislative history and these cases show that Congress intended only to create uniform procedures for administering covered employee benefit plans; it did not wish to eviscerate all state laws that touch on employee benefits. It is in light of these congressional purposes that we must analyze defendant's preemption claim in the instant case.

### IV. Are Schlenz' Wrongful Discharge Claims Preempted By ERISA?

United argues that plaintiff's state law tort and contract claims merely restate her bona fide ERISA claims and are therefore preempted. United contends that the sole theory of recovery stated by her pleadings and proof is that United terminated her to deprive her of employee benefits. On this basis, United concludes that plaintiff's state law claims "relate to" an employee benefit plan under section 514(a) of ERISA.

Plaintiff counters that defendant has characterized her theories of recovery too narrowly. She argues that she will be able to prove that United terminated her as part of an overall plan to reduce costs by replacing higher paid employees with lower paid ones. She maintains United had three separate motives to discharge her, including:

(1) she was about to vest in the pension plan; (2) she was a higher paid employee because of her seniority; and (3) she was soon to be recalled to her former, and more highly paid maintenance planning analyst position. Plaintiff concedes that to the extent her claim is based on a wrongful denial of covered benefits, ERISA is her exclusive avenue of relief. However, she argues that the latter two motives underlying her discharge, which form the basis of her tort and contract claims, were unrelated to any employee benefit plan and are not actionable under ERISA. These latter motives are actionable under California law. The Court finds these arguments persuasive.

First, we find that plaintiff has proffered sufficient proof from which a rational trier of fact could infer that any or all of these three motives underlay United's decision to terminate her.[3] Second, defendant's motion rests on two erroneous legal propositions concerning the scope of ERISA preemption which we will address in turn.

Defendant initially suggests that ERISA preempts all state law claims that arise out of events which simultaneously support an ERISA claim. We do not agree that Congress intended ERISA to prevent a plaintiff from recovering for state law violations where an employer's conduct was the product of mixed motives. The Ninth Circuit implicitly rejected this argument in the recent case of *Sorosky v. Burroughs,* 826 F.2d 794 (9th Cir.1987). There, plaintiff filed a wrongful discharge and age discrimination suit in state court against his former employer following a plant closing. The defendant removed the action to federal court on the ground, *inter alia,* that Sorosky's state law claims were preempted

---

**3.** In her deposition testimony, answers to interrogatories, and declaration, plaintiff maintains that United had mixed motives for terminating her. Moreover, the undisputed facts that plaintiff was fired 47 days before her vesting date, and that she was a more senior employee with potential recall rights, could lead a rational trier of fact to conclude, in view of United's repeated cost cutting efforts, that United fired plaintiff in part to save the cost of her salary.

Wage claims are not covered by ERISA. *Scott v. Gulf Oil Corp., supra,* 754 F.2d at 1505. However, a wage claim based on proof of a pretextual discharge is actionable under California's doctrine of bad faith discharge as alleged in plaintiff's fourth and fifth causes of action. See *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 329, 171 Cal.Rptr. 917 (1981); See Also *Rulon-Miller v. International Business Machines Corp.,* 162 Cal.App.3d 241, 252 n. 6, 208 Cal.Rptr. 524 (1984).

by ERISA. *Sorosky, supra,* 826 F.2d at 799. Plaintiff's breach of contract cause of action was partially based on the employer's breach of a written agreement to provide him monthly retirement benefits. *Id.* at 800. The District Court granted summary judgment to defendant.

The Ninth Circuit reversed in part, and held that Sorosky's breach of contract claim was partially preempted to the extent that it referred to the retirement plan. However, the court explicitly held that to the extent this claim rested on theories unrelated to the benefit plan, such as discharge without good cause, it was not preempted. *Sorosky, supra,* 822 F.2d at 800.

Plaintiff here asserts that United had mixed motives for terminating her. Under *Sorosky,* the fact that a portion of the relief sought by plaintiff is available only under ERISA does not mean that all other claims for relief based on related conduct are preempted. Defendant contends that since plaintiff identified all three motives as part of a single cost reduction scheme that was partially related to a covered pension plan, all three motives by association relate to an employee benefit plan. This argument defies logic. By articulating her theory of the case in this way, plaintiff merely demonstrates the commonplace legal principle that unlawful conduct may have diverse consequences which are remedial in diverse ways.

Defendant further attempts to defeat plaintiff's state law claims by arguing that ERISA preempts all state claims that seek special damages based on lost opportunity to earn employee benefits in the future. The Court finds this proposition extends the reach of ERISA preemption too far.

The Supreme Court clearly established in *Fort Halifax Company, Inc. v. Coyne, supra,* 107 S.Ct. 2211 (1987) that ERISA does not preempt state laws that generally relate to employee benefits. Similarly, in *Scott v. Gulf Oil Corp., supra,* the Ninth Circuit upheld a damage claim for lost prospective benefits against an attack on federal preemption grounds. 754 F.2d at 1505. The court reasoned that the claim for prospective benefits did not allege a denial of benefits due under an existing employee benefit plan. *Id.* Rather, the plaintiffs sought relief based on the employers conduct of negotiating a contract with a successor employer which deliberately excluded an employee benefit plan. The court found the claim for lost future benefits to be indistinguishable from a claim for lost future earnings, which it held would clearly not be preempted by ERISA. *Id.* By contrast, the court held that plaintiffs' claims for benefits they had already accumulated were preempted. *Id.*

Plaintiff's tort and contract claims principally seek damages for lost future compensation and other future benefits which United prevented her from earning by discharging her without just cause. Plaintiff alleges that she was terminated pursuant to a cost-savings plan under which higher paid employees like herself were discharged without cause; she does not allege that she was terminated solely to prevent her from participating in United's various employee benefit plans.

Under *Scott,* plaintiff's claims for lost wages are clearly not preempted. Under *Fort Halifax,* plaintiff's claims based on the lost ability to earn benefits in the future are also not preempted. A damage award that includes a sum for lost future benefits is nothing more than a one time, lump sum payment, triggered by the single event of the employer's wrongful conduct. In this sense such a damage award is indistinguishable from the severance benefits at issue in *Fort Halifax,* which the Court held did not relate to an employee benefit plan. Further, like the severance benefit statute in *Fort Halifax,* this type of damage award does not implicate the regulatory concerns of ERISA because it neither regulates nor interferes with the administration of an employee benefit plan, nor does it create a need for an ongoing administrative program for processing claims or paying benefits. See *Fort Halifax, supra,* 107 S.Ct. at 2219. Therefore, ERISA does not preclude plaintiff from collecting special damages to compensate her for lost future benefits.

In reaching this conclusion we return to the intent of Congress in enacting ERISA's preemption clause. This unique feature of the law was intended to protect employers from the administrative burden of trying to comply with often conflicting state regulatory schemes governing employee benefit plans. However, state laws that affect the administration of employee benefit plans in only a "tenuous, remote or peripheral manner" do not warrant a finding that such state laws "relate to" a covered plan for the purposes of preemption. *Shaw v. Delta Airlines Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). Plaintiff sues for damages based on her lost opportunity to earn future benefits caused by United's wrongful conduct which was unrelated to an employee benefit plan. That claim touches only peripherally on ERISA concerns, and is therefore not preempted.

Accordingly, good cause appearing, IT IS HEREBY ORDERED that defendant's motion for summary judgment on preemption grounds is DENIED.

IT IS SO ORDERED.