IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-60473

---

THOMAS W. BULLOCK,

                                        Plaintiff-Appellee,

                    versus

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Mississippi

---

July 24, 2001

Before HIGGINBOTHAM, DAVIS, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     This case requires that we again visit the uncertain ground of preemption under the Employment Retirement Income Security Act.[1] On interlocutory appeal, the insurer asks us to overturn the district court's finding that ERISA does not preempt a claimant's state law claims. We are persuaded that the claims as now framed are preempted. We vacate the district court's judgment and remand for further proceedings.

                         I

---

     [1] 29 U.S.C. § 1001 *et seq.* (2001).

Thomas Bullock began working as an agent for The Equitable Life Assurance Society in 1973. In early 1994, he became its Agency Manager, responsible for overall administration of Equitable's sales operations in Mississippi. He participated in the company's pension plan.[2]

The written agreement governing Bullock's employment had no fixed duration, providing that either party could terminate the agreement "with or without cause" on written notice. The contract stated that it was "intended to be the entire and final understanding of the Equitable and [Bullock] concerning the matters covered herein . . . . This contract may only be amended in a written instrument executed by both parties." Bullock alleges that after executing the contract, Equitable promised that he would be retained as Agency Manager until age 65 or as long as he met reasonable production and sales performance criteria. Bullock also alleges that Equitable promised him that he would be treated as a franchise owner and business owner. He further contends that Equitable induced him to spend time and money in developing his agency practice, in lieu of personal sales activity. Bullock contends that he met or exceeded all reasonable sales and

_____

[2] The district court and both parties assume that the Equitable pension plan at issue is an ERISA plan. *See* 29 U.S.C. §§ 1002(1), 1002(2)(A) (2001). For purposes of this appeal, we will accept this implicit finding. In any event, Bullock has waived any objection on these grounds. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1045 (5th Cir. 1998).

2

production criteria established by Equitable, a fact that Equitable does not appear to dispute.

On July 14, 1998, Equitable informed Bullock that the company was restructuring and several Agency Managers, including Bullock, were to lose their positions. All managers were offered other management or sales agent positions. Bullock resigned after declining the company's offer, which included a benefits package and required a release of claims.

On July 14, 1999, Bullock filed suit in the Circuit Court of Madison County, Mississippi, alleging breach of contract, breach of implied-in-fact contract, unjust enrichment, and promissory estoppel. Count I of Bullock's complaint, entitled "Breach of Express Contract," alleges that Bullock's termination constituted a "breach of the implied covenant of good faith and fair dealing embodied in every agreement." Count II alleges that Bullock was terminated in violation of an implied-in-fact agreement. The complaint alleges that, in violation of the agreements, Equitable terminated Bullock to avoid heightened pension obligations that the company would bear once he reached age 65. The complaint alleged loss of future earnings from the Agency Manager Agreement, lost future commission income, loss of share in the Equitable franchise, loss of investment in his agency franchise, and loss of value of his retirement and other benefits.

Equitable removed the case to the United States District Court for the Southern District of Mississippi on diversity grounds.

3

Equitable moved for a transfer of venue to the United States District Court for the Southern District of New York, relying on both 28 U.S.C. § 1404(a) and the ERISA transfer provision, 29 U.S.C. § 1132(e)(2).[3] Equitable also sought a declaration that ERISA preempted Bullock's claims.

The district court denied Equitable's motion, later certifying the ERISA-preemption question for interlocutory appeal.[4] This Court granted Equitable's petition to permit this appeal.

II

Equitable contends that the district court erred in finding that ERISA did not preempt Bullock's state-law claims. This Court reviews de novo the court's preemption determination.[5] Section 514(a) of the statute provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to an

---

[3] *See* 28 U.S.C. § 1404(a) (2001) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); 29 U.S.C. § 1132(e)(2) (2001) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.").

[4] *See* 28 U.S.C. § 1292(b) (2001). The transfer-of-venue issue is therefore not before this Court.

[5] *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000).

employee benefit plan" covered by ERISA.[6] The Supreme Court has emphasized the "deliberately expansive" nature of ERISA's preemption provision,[7] which was intended to modify "the starting presumption that Congress does not intend to supplant state law."[8] Section 514(a) gives rise to "ordinary" or "conflict" preemption, resulting in the displacement of state law.[9]

We have observed that, in recent cases, the Supreme Court has returned in ERISA cases to a "traditional analysis of preemption, asking if a state regulation frustrated the federal interest in uniformity."[10] We must "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."[11]

---

[6] 29 U.S.C. § 1144(a) (2001).

[7] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).

[8] *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 (1997).

[9] *See McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998).

[10] *Corporate Health Ins., Inc. v. Tex. Dep't of Ins.*, 215 F.3d 526, 533 (5th Cir. 2000)(citing *DeBuono*, 520 U.S. at 814-15; *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316 (1997); and *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)).

[11] *DeBuono*, 520 U.S. at 813-14.

Of course, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."[12] We find preemption where (1) the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship among traditional ERISA entities—i.e., the employer, plan administrators, fiduciaries, participants, and beneficiaries.[13]

Equitable characterizes Bullock's complaint as alleging acts of economic retaliation prohibited by section 510 of the statute. Section 510 renders it unlawful for "any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising" his rights under ERISA or a pension plan or "for the purpose of interfering with [his] attainment of

---

[12] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 84, 100 n.21 (1983).

[13] *Hook v. Henderson Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1981); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990). ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association or employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). ERISA also defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to benefit thereunder." 29 U.S.C. § 1002(8).

such rights."[14] ERISA therefore prohibits an employer from terminating an employment contract to deprive an employee of pension benefits.[15] Bullock alleges in his complaint that Equitable terminated his employment contract to prevent him from becoming eligible for pension benefits at age 65. These allegations therefore fall squarely within the scope of section 510.

This case also directly involves the relationship among traditional ERISA entities.[16] Bullock does not deny that he would qualify as a "participant" in a pension plan, or that Equitable is an "employer" for purposes of the statute.[17] Equitable also qualifies as a "person" capable of imposing the economic retaliation prohibited by section 510.[18] Given the centrality of

---

[14] 29 U.S.C. § 1140 (2001); *see also Heimann v. Nat'l Elevator Indus. Fund*, 187 F.3d 493, 505 (5th Cir. 1999). The definition of "person" encompasses corporate entities such as Equitable. *See* 29 U.S.C. § 1002(9).

[15] Given that this Court has broadly interpreted the kind of behavior which violates section 510, Equitable's alleged actions would fall under the statutory prohibition. *See* 29 U.S.C. § 1140 (rendering it unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against" an employee for purposes of preventing him from attaining plan benefits); *Heimann*, 187 F.3d at 504-06.

[16] *See Hook*, 38 F.3d at 781.

[17] *See* 29 U.S.C. § 1002(5).

[18] *See* 29 U.S.C. § 1140; 29 U.S.C. § 1002(9). Bullock's contract claims appear to be rooted in Equitable's desire to prevent his pension benefits from vesting. Bullock's unjust enrichment and promissory estoppel claims address the consequences of Equitable's alleged breach. As pled, Bullock's claims implicate—albeit to a varying degree—the core concerns of section 510.

7

Equitable's "pension-defeating motive" to the allegations in the complaint,[19] Bullock's claims implicate his status as a participant, and not merely his employer-employee relationship with Equitable.[20]

Because Section 502(a) provides the exclusive enforcement mechanism for section 510 rights, it preempts any state cause of action seeking such relief, no matter how artfully pled.[21] As the Supreme Court observed, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."[22]

III

---

[19] *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).

[20] *See Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir. 1996).

[21] *See Copling v. The Container Store, Inc.*, 174 F.3d 590, 594 (5th Cir. 1999); *McClelland v. Gronwaldt*, 155 F.3d 507, 515-17 (5th Cir. 1998) (distinguishing between "ordinary" and "complete" preemption); *see also* 29 U.S.C. § 1132(f) (vesting the U.S. district courts with jurisdiction, without respect to amount in controversy or citizenship, to grant relief provided for in section 1132(a)). This Court generally engages in a two-step inquiry, determining, first, whether a claim is subject to ordinary preemption, and second, whether complete preemption applies. *See McClelland*, 155 F.3d at 517. Although complete preemption would be present in this case, this finding is not necessary to our holding. Federal jurisdiction is already premised on diversity.

[22] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

We VACATE the district court's opinion finding no ERISA preemption. We REMAND for proceedings not inconsistent with this opinion, with instructions to grant Bullock the opportunity to amend his complaint to escape federal preemption, if he can.[23]

VACATED and REMANDED.

---

[23] *See Smith v. Tex. Children's Hosp.*, 84 F.3d 152, 157 (5th Cir. 1996); *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 764 (5th Cir. 1989).