Leona TROTTER, Joan Smith, Honorio Perez, Joanne Autry, Marilyn Gilliam, Samantha Michelle Jones, and Diana Webster, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PERDUE FARMS, INC. and Retirement and Benefits Committee of the Perdue Supplemental Retirement Plan, Defendants.

No. Civ. A. 99–893–RRM.

United States District Court, D. Delaware.

Oct. 15, 2001.

Gary W. Aber, Heimann, Aber, Goldlust & Baker, Wilmington, DE, R. Bruce McNew, Taylor & McNew, Wilmington, DE, James M. Finberg, Kelly M. Dermody, Hector D. Geribon, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Joseph M. Sellers, Christine E. Webber, Charles E. Tomkins, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Joel A. Smith, Francis J. Collins, Kahn, Smith & Collins, P.A., Baltimore, MD; Jonathan M. Smith, Deborah M. Thompson, Public Justice Center, Baltimore, MD, Jeffrey Lewis, Alfred H. Sigman, Sigman, Lewis & Feinberg, P.C., Oakland, CA, for plaintiffs.

Kathleen Furey McDonough, Philip A. Rovner, Potter, Anderson & Corroon LLP, Wilmington, DE, Jacob J. Modla, Thomas M. Christina, Charles E. McDonald III, Haynsworth Baldwin Johnson & Greaves LLC, Greenville, SC, for defendants.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is an employment case. Defendant Perdue Farms, Inc. is a Maryland corporation that operates sixteen chicken processing plants in eight states including Delaware, Kentucky, Maryland, North Carolina, and South Carolina. Plaintiffs are current or former hourly employees of Perdue who worked in those chicken processing plants. They allege that Perdue has not compensated them and other hourly employees for work done for the company's benefit—namely, the donning and doffing of required safety and sanitary equipment before and after working on Perdue's production lines. Plaintiffs allege they are entitled to compensation for that time and assert claims for compensation based on the Employee Retire-

ment Income and Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the wage and hour laws of Delaware, Kentucky, Maryland, North Carolina, and South Carolina. Plaintiffs seek redress from both Perdue and the Retirement and Benefits Committee of the Perdue Supplemental Retirement Plan (the "Committee"), which has been appointed by Perdue as the administrator of its employee benefits plan.

On August 16, 2001, this court approved plaintiffs' motion for class certification and established a class definition and various subclasses. The class definition includes "[a]ll persons who at any time from December 16, 1993, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue, and who were or are participating in the Perdue Supplemental Retirement Plan." Various state-specific opt-out subclasses were established, each with different beginning dates, for the employees of Perdue facilities in each of the states alleged in plaintiff's complaint, Delaware, Kentucky, Maryland, North Carolina, and South Carolina. An additional subclass, the "FLSA Subclass," was established for non-exempt hourly employees in all states who were employed by Perdue from December 16, 1996 to the present.

On February 9, 2001, the defendants moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), dismissing plaintiffs' state wage payment claims. Defendants argue that the state wage payment claims are preempted by the exclusive remedy provided in Section 502 of ERISA, 29 U.S.C. § 1132. The court heard oral argument on defendants' motion on March 20, 2001. Following the court's approval of the state-specific classes in its August 16, 2001 Order, the defendants filed a motion citing new authority in support of preemption. The defendants' second motion requested the court to reconsider its approval of state-specific classes, which the defendants assumed to be an implicit denial of their preemption motion. The defendants also requested that the court certify the question of preemption for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This is the court's decision on the defendants' motions.

## I.  BACKGROUND

Plaintiffs allege that Perdue requires its hourly non-exempt chicken processing employees to wear a significant amount of safety and sanitary equipment when working on the chicken processing production lines. The required equipment includes a smock, plastic apron, helmet, hairnet, boots, cotton liner gloves, rubber outer gloves, safety glasses, plastic sleeve covers or arm guards, and earplugs. Additionally, certain employees have to wear specialized cutting gloves or face shields. According to the plaintiffs, employees must arrive before the start of their shift and don all of their required equipment. Though employees record their attendance by "punching in" on time cards each day before putting on the equipment, these time cards are not used for calculating compensation. Instead, employees punch in, don the required equipment, and report to their respective positions on Perdue's production lines. When the production lines begin operation, Perdue supervisors record the time and employees' compensation is calculated on the basis of "line time," the period during which the production line was operational.

According to the plaintiffs, line time is calculated from when the first chicken enters the production line and is ended when

the last chicken enters the production line. Thus, employees on the production line are required to be at their position at the beginning of line time, even if no chicken or chicken meat is at their station, and employees are required to stay after the completion of line time to complete the processing of chickens on the production lines. Following the end of line time, employees then have to remove and sanitize their equipment.

Plaintiffs also allege they are not compensated for time spent working during the one or two breaks to which they are entitled during each shift. During a break, plaintiffs have to complete unfinished work on the production line, remove their equipment, and put the equipment back on prior to the end of the break. According to the plaintiffs, all of this required work is completed without compensation.

Plaintiffs allege that Perdue's compensation scheme violates § 510 of ERISA, 29 U.S.C. § 1140. They allege that under Perdue's Supplemental Retirement Plan, Perdue is required to contribute to the plan two percent of the employee's monthly compensation, including regular and overtime pay. According to the plaintiffs, Perdue has engaged in a policy of requiring employees to work "off the clock" with the intent of minimizing its contributions to the plan and preventing plaintiffs from attaining additional benefits in violation of § 510. Plaintiffs also allege that Perdue has failed to maintain records of the time worked by its employees in violation of § 209 of ERISA, 29 U.S.C. § 209(a)(1), and that Perdue and the Committee have breached their fiduciary duties to the plaintiffs in violation of § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).

Plaintiffs also press claims under the FLSA, 29 U.S.C. § 201, et seq., alleging that Perdue does not provide overtime compensation for the work performed by

plaintiffs in excess of forty hours per week. Particularly, plaintiffs rely on the time spent by employees "off the clock" in donning and doffing protective equipment to support their claim of entitlement to overtime wages. They allege that Perdue has willfully failed to pay overtime wages in violation of the maximum hours provisions of FLSA, 29 U.S.C. § 207(a)(1) and § 215(a), and that they are thus entitled to damages in the amount of their unpaid overtime compensation pursuant to 29 U.S.C. § 216(b). Plaintiffs also allege that Perdue has failed to keep records of time spent by employees off the clock in violation of 29 U.S.C. § 211(c) and § 215(a).

Last, plaintiffs assert that Perdue's failure to compensate them for time worked "off the clock" violates various state wage and hour laws. Specifically, the plaintiff subclasses for each respective state seek relief pursuant to the Delaware Wage Payment and Collection Act, 19 Del. C. §§ 1101, et seq., the Kentucky Wage and Hour laws, KRS §§ 337.010, et seq., the Maryland Wage and Hour Law and Maryland Wage Payment and Collection Law, Md.Code Ann., Lab. & Empl. §§ 3–401, et seq., 3–501, et seq., the North Carolina Wage and Hour Act, G.S. §§ 95–25.1, et seq., and the South Carolina Payment of Wages Act, S.C.Code Ann. §§ 41–10–10, et seq. The plaintiffs' state wage and hour law claims all derive from the same underlying facts as the other claims—the failure of Perdue to compensate its employees for time spent donning and doffing necessary equipment and preparing for service on Perdue's production line.

## II. DISCUSSION

### A. Are Plaintiffs' State Law Claims Preempted by ERISA?

#### 1. The Motion for Judgment on the Pleadings

The defendants argue that plaintiffs' state wage and hour law claims must be

dismissed because they are preempted by ERISA. ERISA provides for preemption of state law claims on two different grounds. First, § 514 of ERISA directly preempts "all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has described preemption of state laws that "relate to" employee benefit plans as "express preemption." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Although the parties debate the effect of *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), on the scope of express preemption, the court will not address whether express preemption applies to this case. Defendants have not argued that the plaintiffs' claims are expressly preempted and instead have entirely relied on the second form of ERISA preemption to support their motion.

The second form of preemption occurs when a state law claim "conflicts directly with an ERISA cause of action." *Id.* This form of preemption, referred to by the Court as "conflict pre-emption," is derived from two provisions of ERISA. *Id.* at 144, 111 S.Ct. 478. Section 510 of ERISA provides that it is unlawful for any person

> to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an ERISA plan] for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...

29 U.S.C. § 1140. This section protects employees from termination or other adverse employment actions motivated by an employer's intent to defeat an employee's accession to plan benefits. *Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. 478; *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 677 (3d Cir.2000). Section 502 of ERISA is a civil enforcement mechanism that permits ERISA plan participants to bring a civil action to enjoin or obtain other relief for practices that violate ERISA, including § 510. 29 U.S.C. § 1132(a)(3). The civil action provided for in § 502 is the exclusive means by which plan participants can enforce the protections of ERISA. *Ingersoll–Rand*, 498 U.S. at 145, 111 S.Ct. 478. The section provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under the subchapter brought by ... a participant." 29 U.S.C. 1132(e)(1). Thus, § 502 and § 510 together provide an exclusive federal mechanism for the vindication of rights protected by ERISA and state laws that conflict with this mechanism are preempted. *Ingersoll–Rand*, 498 U.S. at 145, 111 S.Ct. 478.

■ Conflict preemption is based on the principle that Congress intended the rights guaranteed by ERISA to be enforced only in federal court and according to a uniform federal law. As the Supreme Court has explained:

> the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). It is this principle of uniformity in the regulation of ERISA plans that motivated the Court in *Ingersoll–Rand* to declare that a Texas state law claim that an employee was discharged to prevent his attainment of pension plan benefits "conflicts directly" with the protections afforded under § 502 and § 510 of ERISA and was therefore preempted.[1]  *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478. "Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a)." *Id.* at 145, 111 S.Ct. 478. Thus, conflict preemption exists when a state law protects an interest guaranteed by § 510 and remedy for the violation of that interest is enforceable under § 502.

The court's inquiry therefore turns on whether the state law protects an interest guaranteed by § 510. As described by the Third Circuit, "Congress enacted [§ 510] to prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights." *Zipf v. AT & T Co.,* 799 F.2d 889, 891 (3d Cir.1986). Section 510 thus protects employees from employers who terminate employees or take other adverse employee actions with a "benefits-defeating motive." *Wood,* 207 F.3d at 674.

The defendants note that the plaintiffs' first cause of action alleges that Perdue refuses to pay employees for work "off the clock" with the intent of minimizing its contributions to the pension plan. This challenge to an adverse employment action

(namely, not paying employees for time worked) is a traditional ERISA claim under § 510 because it is alleged to have been taken with a "benefits-defeating" intent. *Wood,* 207 F.3d at 677. The defendants argue that because the plaintiffs have alleged that the adverse employment action was motivated by a benefits-defeating intent, the plaintiffs cannot also claim that the same adverse employment action violates state wage and hour laws because ERISA preempts further relief.

In response, plaintiffs argue that its ERISA and state law claims, though they arise from the same adverse employment action, do not conflict with one another because the state law claims do not require that the defendants acted with a benefits-defeating intent. According to the plaintiffs, to prevail on their ERISA claim, they do not need to show the benefits-defeating intention was the sole motivation for the employer's adverse employment action, but nonetheless must prove the employer had the "specific intent" to violate ERISA. *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3d Cir.1987) (citing *Watkinson v. Great Atl. & Pac. Tea Co.,* 585 F.Supp. 879, 883 (E.D.Pa.1984)); *see also Garratt v. Walker,* 164 F.3d 1249, 1256 (10th Cir. 1998) (en banc). The specific intent to violate ERISA is the "essential element of proof" for a claim under § 510. *Id.* at 852.

The plaintiffs argue that their state wage and hour law claims, in contrast, do not require the showing of benefits-defeating intention and therefore are not preempted by ERISA. For example, the Delaware Wage Payment and Collection Act requires only that "[e]very employer

---

**1.** Because *Ingersoll–Rand* relied upon both express preemption under § 514 of ERISA and conflict preemption under § 502(a) and § 510, some courts have noted that the latter discussion is dicta. *See Harsch v. Eisenberg,* 956 F.2d 651, 660 (7th Cir.1992) (characteriz-

ing the conflict preemption holding of *Ingersoll–Rand* as dicta). The Third Circuit has held, however, that the conflict preemption holding of *Ingersoll–Rand* is not dicta because the two forms of preemption are related. *Wood,* 207 F.3d at 678 n. 5.

shall pay all wages due to the employer's employees on regular paydays," and the failure to do so is cause for suit. 19 Del. C. §§ 1102, 1113. The other states' laws are no different—none require an express intention before an employer becomes liable to its employees for regular or overtime wages. *See, e.g.,* Ky.Rev.Stat. Ann. § 337.020; Md.Code Ann., Lab. & Empl. §§ 3–427, 3–507.1; N.C. Gen.Stat. § 95–25.22; S.C.Code Ann. § 41–10–80. The plaintiffs argue that liability for breaches of the various state wage and hour law claims can be established without showing that Perdue operated with any specific intent. Thus, they argue that their state law claims do not conflict with ERISA's protections under § 510 and are therefore not preempted.

The difficulty presented by the parties' dispute is that both the ERISA and state law claims arise from the same core of operative facts and the applicable relief varies depending on the nature of Perdue's intent. Thus, if the plaintiffs can establish an entitlement to the wages and that they were denied the wages because Perdue wished to minimize its contributions to the employee benefit plan, then the plaintiffs can succeed on their § 510 ERISA claim, even if Perdue might have also had an additional or secondary motivation. Both the plaintiffs and defendants agree that an ERISA claim can be successfully prosecuted in cases where a benefits-defeating intention was one of several motivations for the employer's action. *See Gavalik,* 812 F.2d at 851. But the defendants argue that because plaintiffs can seek relief pursuant to § 510 and § 502 in such a case, all actions alleging a mixed motive in taking an adverse employment action must be preempted by ERISA because any other relief would conflict with it.

■ The defendants' argument extends the protections afforded by § 510 of ERISA too far. While it is true that the plaintiffs can succeed on their ERISA claim under § 510 even if Perdue acted with mixed motives, *id.,* not every case alleging mixed motives in the taking of an adverse employment action is preempted by the protections afforded in § 510 of ERISA. Conflict preemption is limited to those circumstances in which state law provides an alternative remedy for the violation of rights protected by ERISA. *Ingersoll–Rand Co.,* 498 U.S. at 142, 111 S.Ct. 478; *Ragan v. Tri–County Excavating Inc.,* 62 F.3d 501, 511 (3d Cir.1995). The Supreme Court has recognized that ERISA does not preempt state laws that might afford parallel relief from the same set of facts as long as the state law claims do not protect those rights protected by § 510 of ERISA. *John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank,* 510 U.S. 86, 98, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993). "ERISA leaves room for complementary or dual federal and state regulation, and calls for federal supremacy when the two regimes cannot be harmonized or accommodated." *Id.* The Third Circuit has applied this principle in cases such as *PAS v. Travelers Ins. Co.,* 7 F.3d 349, 356 (3d Cir.1993), in which that court found that a state statute that "provide[s] a proper plaintiff with a remedy for an insurance carrier's violation of an insured handicapped person's right not to be unfairly discriminated against in the terms and conditions of a health insurance policy" does not duplicate a right guaranteed by § 510 and therefore does not conflict with ERISA.

Simply because § 510 of ERISA may be implicated by an adverse employment action because the plaintiff has alleged the defendant acted with a benefits-defeating intent does not foreclose other state law vehicles of relief that may result from the employer's actions. Several cases have

held that plaintiffs may assert both state law claims and ERISA claims arising from the same adverse employment action. For example, the Eleventh Circuit has held that a plaintiff employee who alleges he was fired with a benefits-defeating intent can bring both an ERISA challenge and a tort claim that the firing was done in a manner that inflicted upon him severe emotional distress. *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237, 1244 (11th Cir. 1989). The court in *Clark* found guidance in *Farmer v. United Bhd. of Carpenters & Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), in which the Supreme Court found a similar preemption provision of the National Labor Relations Act did not conflict with a claim of intentional infliction of emotional distress arising from the same union actions. The Court in *Farmer* found no preemption because "the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context." *Farmer,* 430 U.S. at 305, 97 S.Ct. 1056. Similarly, in this case the plaintiffs can succeed on their state law claims without addressing whether Perdue acted with a benefits-defeating intention and there is no conflict between resolution of the state claim and the rights guaranteed by § 510 of ERISA.

There are other cases, like *Clark* and *Farmer,* in which courts have found that a state law claim and an ERISA claim arising from the same facts do not necessarily conflict. For example, the Third Circuit in *Joyce v. RJR Nabisco Holdings Corp.,* 126 F.3d 166, 172 (3d Cir.1997), held that ERISA did not preempt a claim that an employer failed to accommodate an employee's disability in violation of the New Jersey Law Against Discrimination. The court noted, however, that the discrimination claim might be preempted "[i]f Joyce claims that RJR failed to accommodate his

disability in order to deny him benefits." *Joyce,* 126 F.3d at 172 n. 4 (citing *Ingersoll–Rand*). Similarly, the Ninth Circuit has found that a state law breach of employment contract claim could be preempted to the extent it is prosecuted on a theory related to employee benefits, but it is not preempted "to the extent it relies on theories independent of the benefit plan." *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 800 (9th Cir.1987).

One district court case, *Schlenz v. United Airlines Inc.,* 678 F.Supp. 230 (N.D.Cal. 1988), is particularly relevant to our inquiry because the plaintiff made claims similar to those of the plaintiffs here. She alleged that she was terminated by her employer for various reasons, including to keep her pension from vesting and to prevent her from reaching the promotion, with higher wages, to which she would be shortly entitled. *Id.* at 234. The defendant argued that because plaintiff's claims alleged mixed motivations for the employer's single cost-cutting scheme, ERISA preempted her state law claims of wrongful termination. The court disagreed. It said, "[p]laintiff here asserts that United had mixed motives for terminating her... By articulating her theory of the case in this way, plaintiff merely demonstrates the commonplace legal principle that unlawful conduct may have diverse consequences which are remedial in diverse ways." *Id.* at 235 (relying on *Sorosky,* 826 F.2d at 800).

Defendants in this action seek to distinguish *Schlenz* on the ground that the plaintiff's benefits in that case were not tied to her wage claims because the vesting of her pension was unrelated to her promotion. This fact, defendants argue, is important because the motives in *Schlenz* were separable and could be independently proven, while the motives here are related because the benefits are dependent upon

the payment of wages under the Perdue pension plan. This argument is unpersuasive because it misapprehends the nature of conflict preemption. Regardless of whether the motives are related to each other or can be proven independently, for ERISA to preempt a state law claim, the defendants must show how the plaintiffs' prosecution of the state claims would conflict with the relief mechanism afforded by § 510 and § 502 of ERISA. Because the plaintiffs can succeed on the state wage and hour claims without showing that Perdue acted with the specific intent to diminish its payments to the retirement plan, the defendants cannot show how the state law claims would conflict with a right guaranteed by § 510.

The cases relied on by the defendants are not to the contrary. In all of those courts that have found ERISA preemption of a state claim, the plaintiff's complaint alleged that the employer's sole motivation was to defeat or diminish the plan benefits to which the employee was entitled. For example, in *Ingersoll–Rand*, the plaintiffs alleged that "a principal reason for his termination was the company's desire to avoid making contributions to his pension fund." *Ingersoll–Rand*, 498 U.S. at 135–36, 111 S.Ct. 478. In *Wood*, the Third Circuit stated that "we find nothing in his complaint other than an allegation that Prudential terminated Wood's employment to avoid paying health and retirement benefits." *Wood*, 207 F.3d at 677. Thus, the plaintiff in both cases proceeded to challenge a right protected by § 510 of ERISA; specifically, the right to not be terminated for participating in an employee benefit plan.

■ The plaintiffs' state law claims in this action do not challenge a right protected by § 510. The limited nature of plaintiffs' state wage and hour law claims is evident if one envisions the course of this litigation were the court to grant defendants' motion. Were the court to find preemption, the defendants would likely file a motion for summary judgment on the remaining claims. Putting aside the plaintiffs claims under the FLSA, the plaintiffs would have to establish a factual basis for their allegation that the defendants acted with a benefits-defeating intent to survive defendants' summary judgment motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If no factual basis for such an intention existed, summary judgment on the claims would be appropriate, despite the fact that the plaintiffs could have successfully prosecuted their preempted state law claims without a showing of such an intent. Thus, the defendants would succeed in avoiding liability on the state wage and hour law claims even though the plaintiffs might have proffered sufficient evidence that Perdue did not compensate them as required by state law. If plaintiffs can successfully prosecute their claims under state wage and hour laws without implicating rights protected by § 510 and § 502 of ERISA, there is no conflict with those provisions that would require preemption.

2. The Motion to Alter or Amend the Court's August 16, 2001 Order

Following argument on both the preemption question and plaintiff's motion for class certification, the court certified certain plaintiff classes, including state-specific classes for the individual state wage and hour law claims. Defendants have apparently taken the resolution of the class certification motion as dispositive of their preemption motion and have filed a second motion to alter or amend the class certification order and to certify the preemption question for interlocutory appeal. In their motion to alter or amend, the defendants assert that three recent cases have reaf-

firmed that plaintiffs' state law claims are preempted. The court will address this authority in turn.

The defendants find support for their preemption argument in *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266 (3d Cir.2001), in which the Third Circuit addressed whether ERISA preempted certain claims against health care providers and a health maintenance organization. The court applied the Circuit's test for whether claims against an HMO are preempted by § 502 and § 510 of ERISA, which asks whether the state law claims relate to the quality of health benefits, which do not conflict with the enforcement provisions of ERISA, or whether the claims address "the quantum of benefits due under an ERISA-regulated plan" and therefore do conflict § 502. *Id.* at 272 (citing *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 356–57 (3d Cir.1995)). The Court did nothing new by applying this familiar dichotomy to determine the scope of ERISA preemption of claims against HMOs. Rather, the *Pryzbowski* opinion attempted to further explain the distinction between quality and quantity claims by using the terms, adopted from *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), "treatment decisions" and "eligibility decisions." Treatment decisions relate to quality of medical care provided, "which may be the subject of a state [cause of] action." *Pryzbowski*, 245 F.3d at 273. Eligibility decisions "challenge[ ] the administration of or eligibility for benefits, which falls within the scope of § 502(a) and [are] completely preempted." *Id.* In Pryzbowski's case, her claim against the HMO for failing to approve her request to see an out-of-network physician in a timely fashion were preempted because it "necessarily concerns the administration of her benefits." *Id.* at 274. In contrast, her claims against her physicians for failing to advocate strenuously on her behalf in support of her request were not preempted because those claims, presuming that a duty to advocate on behalf of one's patients existed under New Jersey law, challenged treatment decisions of the physicians and do not conflict with ERISA. *Id.* at 280.

Defendants contend that *Pryzbowski* supports their position because it reaffirms the principle that once a court has jurisdiction over a state law claim pursuant to § 502(a) the claim is preempted and must be dismissed. There is no doubt that this is true—state law claims that can be brought under § 502(a) are preempted. But the relevant inquiry is what kind of state law claims can be brought under § 502 and therefore stand in conflict with ERISA. The court in *Pryzbowski* noted that the plaintiff's challenge to the HMO's failure to approve her benefit request in a timely fashion "fall[s] squarely within administrative function" and that permitting such a claim "would open the door for legal challenges to core managed care practices . . . which the Supreme Court eschewed in *Pegram*." *Id.* at 274–75. But the court also distinguished related claims of medical malpractice for the physician's failure to advocate strenuously for the approval of the benefit and found such claims, if they could be made under New Jersey law, were not preempted. *Id.* at 280. Thus, if *Pryzbowski* supports either party, it supports the plaintiffs. Like Pryzbowski, the plaintiffs have asserted claims that may be brought pursuant to ERISA to the extent they challenge the administration of benefits, but also are not preempted to the extent the duty they seek to enforce, such as a duty to pay wages or to advocate for patients, does not conflict with the protections afforded in § 510 and the enforcement mechanism of § 502.

Defendants also find support in *Bullock v. The Equitable Life Assurance Soc'y of the United States*, 259 F.3d 395 (5th Cir. 2001), in which the Fifth Circuit found a

plaintiff's claims of breach of a contract of employment to be preempted by ERISA. The defendants claim that *Bullock* establishes the proposition that a plaintiff cannot plead state law claims in an effort to avoid the preemptive effect of ERISA. *Id.* at 400–01. Again, while it is true that plaintiffs cannot "artfully plead" their ERISA claims as state law claims to avoid the preemptive effect of the statute, that is immaterial to the question of whether *Bullock* is analogous to the present case. In *Bullock*, the court found preemption because Bullock's breach of employment contract claim was tied to an alleged benefits-defeating intent. "Bullock alleges in his complaint that Equitable terminated his employment contract to prevent him from becoming eligible for pension benefits at age 65. These allegations therefore fall squarely within the scope of section 510." *Id.* at 400. The court went on to note "the centrality of Equitable's 'pension-defeating motive' to the allegations in the complaint" in ruling that the state law claims were preempted. *Id.* Thus, *Bullock* is no different than cases, such as *Wood*, 207 F.3d at 677, that have held a state claim in which a benefits-defeating intent is central to the cause of action is preempted. While the plaintiffs argue that a breach of contract action can be proven without regard to the defendant's intent, the point of *Bullock* and *Wood* is that those state law claims that do rely on a benefits-defeating intent, even if they do not need to, are preempted by ERISA. Because this court has found that plaintiffs have alleged their state wage and hour law claims independently of any benefits-defeating intent necessary for the ERISA claims, it does not find either *Bullock* or *Wood* to be on point.

Last, the defendants look to the Supreme Court's recent decision in *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), in which the Court found a Washington state statute to be "related to" ERISA plans and therefore expressly preempted under § 514. The Washington statute required the revocation of beneficiary designations in life insurance policies that named a spouse to whom the decedent later became divorced. *Id.* at 1326. The Court ruled the statute "implicates an area of core ERISA concern," particularly the requirement that plans specify their beneficiaries and that ERISA fiduciaries administer plans in accordance with the designations contained in plan documents. *Id.* at 1327. Defendants suggest that this holding demonstrates the superiority of federal regulation and rebuts the plaintiffs' argument that the interest of states in the compensation of their citizens for work should be paramount. The court agrees that the Court in *Egelhoff* emphasized the supremacy of federal legislation when state legislation would impair the uniformity intended by Congress. Thus, in *Egelhoff* the Court found preemption where "the statute at issue here directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." *Id.* at 1329. Yet the defendants have not shown why permitting the plaintiffs to prosecute their state wage and hour law claims would necessarily conflict with ERISA if they can do so without regard to any benefits-defeating intent. In the absence of such a conflict, the defendants cannot establish that plaintiffs' state wage and hour law claims implicate rights protected by § 510 and exclusively enforced under § 502. Thus, none of the defendants' supplemental authority supports the existence of conflict preemption of the plaintiffs' state law claims.

### B. Should the Preemption Question be Certified for Interlocutory Appeal?

The defendants also seek interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of the court's ruling that plaintiffs' state wage and hour law claims are not preempted.

Section 1292(b) provides that a district court may certify an order for appeal that would not be ordinarily appealable when the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Third Circuit has held that all three of these showings are requirements. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.1974) (en banc).

The preemption of state law claims is a controlling question of law. "A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Id.* at 755. Because preemption questions are entitled to plenary review on appeal, *Pryzbowski*, 245 F.3d at 268, the court's order, if in error, would be reversible. Moreover, in plaintiffs' responsive briefing, they state they "dispute the presence of a controlling question of law," but "concede" that it presents a closer question than the other two requirements for interlocutory appeal. Thus, the court finds that defendants can satisfy this showing.

The court is not convinced, however, that there is a substantial ground for difference of opinion on the preemption issue. The defendants have not shown authority establishing that state wage and hour laws cannot be maintained in the same action as an ERISA claim under § 502 because the latter preempts the former. While the parties have not shown precedent directly on point, thus making this an issue of first impression, the great weight of authority on analogous state law claims establishes that conflict preemption will only be found where the state law directly conflicts with ERISA because it requires a benefits-defeating intent. *See Ingersoll–Rand*, 498 U.S. at 135–36, 111

S.Ct. 478; *Bullock*, 259 F.3d at 400; *Wood*, 207 F.3d at 677. Furthermore, several cases have found no preemption of state law claims arising from the same facts as an ERISA claim, presuming that the state claims can be prosecuted without reliance on a benefits-defeating intent. *See Joyce*, 126 F.3d at 172 n. 4; *Clark*, 865 F.2d at 1244; *Sorosky*, 826 F.2d at 800. Defendants have not shown authority directly to the contrary and therefore the court finds that the question is not one on which there is a substantial ground for difference of opinion.

Last, the court does not believe that interlocutory appeal would hasten the ultimate termination of this litigation. The defendants believe that a successful appeal would reduce the number of issues for trial, facilitate settlement discussions, and prevent the expenditure of sums for notice to the state-specific subclasses. These assertions are belied, however, by the continued existence of plaintiffs' FLSA claim, which presents many similar issues to those that will be raised in considering the state wage and hour law claims. Because the FLSA seeks relief on the same set of facts, the continued existence of the FLSA claim would not significantly diminish the number of facts to be proven at trial or reduce the number of persons who would be entitled to notice. While elimination of the state claims would avoid presenting five different jury instructions on the law of each state, the additional time necessary to prepare such instructions is minimal and jury confusion is unlikely to result.

Thus, because the FLSA claims remain pending, interlocutory appeal of the state wage and hour law claims is unlikely to result in any sufficient efficiencies in the trial process. The same facts pled in the plaintiffs' complaint would still have to be proven and the same universe of Perdue employees would still be entitled to notice of the class action. The defendants' sug-

gestion that elimination of the state law claims will facilitate settlement is based on the fact that many of the state wage and hour laws permit double, treble, or punitive damages and that elimination of those claims will limit Perdue's liability and improve the possibility of settlement. The court takes this assertion on the defendants' part to be true. But because a significant number of issues remain in this litigation regarding Perdue's liability, it is unlikely that the mere dismissal of state claims will bring the parties closer to resolution of the main issue in the case—the employees' entitlement to wages while dressing and preparing for service on Perdue's production lines. Moreover, although the Third Circuit has not ruled on the subject, Perdue may still be liable for punitive damages under the FLSA. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 112 (7th Cir.1990). Thus, it is unlikely that appellate review of the preemption motion will hasten the termination of this litigation.

The court will issue an order in accordance with this opinion.